**In re Joseph Balfour SCHWARTZ, Debtor.**

**Bankruptcy No. 84 B 11433.**

United States Bankruptcy Court, S.D. New York.

March 25, 1986.

---

**924**

Lance Spodek, New York City, for debtor.

Raucher, Ehrlich & Laracuente, P.C., New York City, pro se; David N. Raucher, of counsel.

## DECISION AND ORDER

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

The debtor, Joseph Balfour Schwartz (the "debtor"), filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code ("the Code"), 11 U.S.C. § 701 *et seq.* (1984) on October 5, 1984. He now moves for the dismissal of his petition without prejudice. The two largest creditors of the estate oppose the motion.

### I.

The two major creditors are law firms. Seymour Ostrow, P.C. represented the debtor's wife in a pre-petition matrimonial action and had been awarded fees and expenses by the state court in the amount of $21,718.75. This Court has previously ruled that this debt is nondischargeable under § 523(a)(5) of the Code. *Seymour Ostrow, P.C. v. Schwartz (In re Schwartz),* 53 B.R. 407 (Bankr.S.D.N.Y.1985). Farber, Raucher, Goldberg & Ehrlich, P.C., now known as Raucher, Ehrlich & Laracuente, P.C. ("Raucher, Ehrlich"), represented the debtor in the same matrimonial action. It has filed a claim in the sum of $25,819.86 for fees and expenses in that engagement. Prior to the filing of the petition, Raucher, Ehrlich had commenced an action in the state court based on its claim for attorneys fees. The petition was filed before trial was held.

In urging dismissal of his petition, the debtor claims that the creditors would not be prejudiced since they would retain their rights to pursue their actions against the debtor in the New York State courts. In opposing the dismissal, both creditors assert that the debtor has not shown cause for dismissing the petition. They add the allegation that the debtor fraudulently transferred certain stock to his father at or about the time that the bankruptcy petition was filed.

On that basis, Raucher, Erlich has commenced a proceeding seeking to deny the debtor his discharge under § 727 of the Code. That matter is scheduled to be tried

shortly. Both creditors assert that it would be inequitable for the debtor to seek the protection of the bankruptcy laws and then subsequently move to dismiss upon the discovery of facts that are alleged to indicate that a fraudulent conveyance has occurred and that assets which possibly had previously been hidden might have been discovered. Additionally, Raucher, Ehrlich claims that it would be prejudiced if the case was dismissed. To it, dismissal would cause a delay in prosecuting the fraudulent conveyance action against the debtor and his father, which would then have to be done under state law.[1] It also claims that dismissal would result in a distribution of the debtor's assets that would be neither fair nor orderly, since it will result in a race to attack the assets which Raucher, Ehrlich claims to have uncovered during the course of its proceeding seeking to deny the debtor a discharge. The trustee of this estate has taken no position with respect to the motion.

## II.

■ While the debtor is free to file for bankruptcy, "... he does not enjoy the same discretion to withdraw his case once it has been commenced." *In re Klein,* 39 B.R. 530, 532 (Bankr.E.D.N.Y.1984). Section 707(a) of the Code provides that the court may dismiss a Chapter 7 case "... only after notice and a hearing and only for cause ..." Cause includes, but is not confined to, an unreasonable delay by the debtor that is prejudicial to creditors, or the non-payment of fees and charges pursuant to 28 U.S.C. § 123. 11 U.S.C. § 707(a); 4 *Collier on Bankruptcy* § 707.-01, pp. 707–3—707–4 (15th ed. 1985). Although the Code does not specifically address whether § 707(a) applies to a debtor seeking voluntary dismissal of his own petition, case law so provides. *In re Mathis Insurance Agency, Inc.,* 50 B.R. 482, 486 (Bankr.E.D.Ark.1985); *In re Klein, supra.*

Bankruptcy Rule of Procedure 1017(a) confirms that conclusion in providing that the cause requirement applies to a nonconsensual dismissal of both voluntary and involuntary cases. Advisory Committee Note to Rule 1017(a).

■ In determining whether cause exists, the test is whether dismissal is in the best interest of the debtor and his creditors. As to a debtor, best interest lies generally in securing an effective fresh start upon discharge and in the reduction of administrative expenses leaving him with resources to work out his debts. As to·creditors, the issue is one of prejudice, and if delay is said to have prejudiced them, whether, as § 707(a) provides, the delay has been unreasonable. They are generally not prejudiced by dismissal since they will no longer be stayed from resorting to the state courts to enforce and realize upon their claims. But creditors can be prejudiced if the motion to dismiss is brought after the passage of a considerable amount of time and they have been forestalled from collecting the amounts owed to them. A prejudicial delay also creates the appearance that such an abusive practice is implicitly condoned by the Code. *In re Klein,* 39 B.R. at 533.

■ Other forms of potential abuse must be guarded against. Dismissal of a bankruptcy petition that was filed principally to forestall creditors should not be permitted after the delay sought has been achieved. Nor should dismissal be ordered where it is contemplated that the case might be refiled in another forum far from creditors. *Mathis,* 50 B.R. at 487. Similarly, dismissal of a case after it has appeared that the debtor failed to account honestly for his assets is not to be sanctioned, for such a failure indicates the likelihood of further questionable practices to the detriment of creditors. As stated in *Klein,*

---

**1.** Raucher, Ehrlich also claimed that the delay would give the debtor additional time in which it might secrete certain of its assets. This concern was addressed at the hearing on this motion, which occurred on March 4, 1986, where

debtor's counsel stated that it would agree to retain certain assets for three months in order to give Raucher, Ehrlich time to establish in state court its right to attach those assets.

It may be reasonably inferred from debtor's questionable behavior inside of [sic] bankruptcy that such conduct will persist in derogation of the creditor's rights in the event this court were to order the dismissal of debtor's petition.

39 B.R. at 533.

■ Similarly, a strong possibility that additional assets of the estate may be discovered argues against dismissal and for retention of jurisdiction in order to assure the equitable and full distribution of newly discovered assets and voidable transfers to all creditors. *In re Klein*, 39 B.R. at 533; *In re Ross*, 21 B.R. 5 (Bankr.E.D.N.Y. 1982).

■ In the end, the Court is to assess the vagaries of each case. Here, it is plainly apparent that the bankruptcy process lost considerable meaning for this debtor upon this court's October, 1985 ruling that Ostrow's claim is non-dischargeable. His fresh start has been significantly impaired. It also appears that this is not a case that was filed primarily to delay and forestall creditors. The debtor scheduled hard assets of $7,132.00 as against liabilities of $58,128.61. He cannot pay his debts. The other asset appearing on the schedules is a malpractice claim against Raucher, Ehrlich in the amount of $80,000. The notion that that claim should be tried together with Raucher's claim for attorneys fees in the state court has appeal.

Counseling against dismissal is both the delay that has occurred and the allegation of the debtor's having fraudulently transferred stock to his father. The delay does not appear to be attributable to the debtor; nor does it appear to be unreasonable. Although the motion to dismiss was filed on the eve of trial of the dischargeability action, it was also filed only a few months after this Court's ruling that the Ostrow claim was non-dischargeable. That signifi-

cant impairment of the debtor's hoped-for fresh start is a patently reasonable ground for the motion. More disturbing is the alleged fraudulent transfer. To date, the trustee has not commenced a proceeding under § 548 of the Bankruptcy Code to set it aside. Instead, he has reported that the case is a no-asset case. Nor has any creditor petitioned this Court for permission to commence such a proceeding on behalf of the estate in place of the Trustee. *See e.g., In re Toledo Equipment Company, Inc.*, 35 B.R. 315, 11 B.C.D. 832 (Bankr.N.D.Ohio 1983). Perhaps that delay by creditors is due to the pendency of Raucher, Ehrlich's action seeking to bar discharge on the ground of the making of the transfer. But it remains true that all we have before us, unlike the Court in *Mathis*, where the motion to dismiss was denied based on a record which was "... substantially replete with evidence of fraud ...", 50 B.R. at 487, is a mere allegation of fraud and the fact that an action to recover the transfer has not been commenced.

Also weighing in favor of granting the debtor's motion are the concepts of federalism and judicial economy. In the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 101(a), 98 Stat. 333 (1984), Congress evinced the general intention that bankruptcy cases or proceedings based upon a state law claim or cause of action shall be heard in a state forum if an action is commenced there and can be timely adjudicated. 28 U.S.C. § 1334(c)(2) (1984). Here, to permit dismissal would permit Raucher, Ehrlich to continue with its state court action regarding its fees and expenses and to commence an action to void the stock transfer under §§ 273, 276 and 278 of the New York Debtor and Creditor Law, N.Y.Debt. & Cred.Law §§ 273, 276, and 278 (McKinney 1945).[2]

---

**2.** These sections of the New York Debtor and Creditor Law embody the Uniform Fraudulent Conveyance Act ("U.F.C.A."), and are substantially similar in may respects to the fraudulent transfer section of the Bankruptcy Code, 11 U.S.C. § 548 (1984). N.Y.Debt. & Cred.Law §§ 270–281 (McKinney 1945, Supp.1984)

("DCL"); *See* 4 *Collier on Bankruptcy* ¶ 548.01 (15th ed. 1985). The U.F.C.A. provides, in part, that conveyances made without a fair consideration by a party who is or who will thereby be rendered insolvent are deemed to be fraudulent (DCL § 273). A conveyance made with actual intent to hinder, delay or defraud either present

Additionally, judicial economy is here furthered by dismissing the petition and allowing the case to be heard in the state courts. If the case was permitted to continue in this court, three separate litigations would be required. They would include not only separate litigations regarding (i) Raucher, Ehrlich's claim and the debtor's malpractice claim and (ii) the pending litigation regarding the dischargeability of Raucher, Ehrlich's claim, but also (iii) a litigation seeking to set aside the alleged fraudulent conveyance. That the transferee is not a party to the dischargeability litigation would seem to require its full litigation.[3] If the petition was dismissed, the burden on the courts in general would be decreased because the need to litigate the dischargeability question would be eliminated and the fraudulent transfer issues would be litigated only once.

We thus conclude that the petition should be dismissed. Although he might not possess any such defenses, such dismissal is to be subject to the debtor filing a waiver of defenses based on the statute of limitations and laches with respect to the claims of Raucher, Ehrlich discussed herein and any action by a creditor under the N.Y.Debtor and Creditor Law.

IT IS SO ORDERED.

---

or future creditors is fraudulent as to both present and future creditors (DCL § 276). If a conveyance is fraudulent as to a creditor whose claim has matured, then the creditor, "as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser," can generally have the conveyance set aside to the extent of his claim or disregard the conveyance and attach or levy execution upon the conveyed property (DCL § 278).

**3.** While the complaint in the dischargeability action also seeks judgment declaring the stock to be property of the estate, the debtor's father to whom the stock was allegedly transferred is not a party to the action. While Raucher, Ehrlich has now apparently moved to add the father to the proceeding, to do so at this stage would only delay that proceeding to permit him to avail himself of discovery. Furthermore, absent compliance with the procedure set forth in *Toledo Equipment Company, Inc.,* including notice to the trustee and a showing that the trustee unreasonably failed to act, Raucher, Ehrlich would apparently lack standing.