**In re James D. STUDDARD, M.D., and Dorothy M. Studdard, Debtors.**

**Bankruptcy No. 92–42707M.**

United States Bankruptcy Court,
E.D. Arkansas, W.D.

Aug. 31, 1993.

853

C.B. Blackard, Little Rock, AR, for Pulaski Bank & Trust Co.

Frederick S. Wetzel, Little Rock, AR, for the debtors.

## ORDER

JAMES G. MIXON, Chief Judge.

On November 5, 1992, James D. Studdard, M.D., and Dorothy M. Studdard (the debtors) filed a voluntary petition for relief under the provisions of Chapter 7 of the United States Bankruptcy Code. On December 28, 1992, Pulaski Bank and Trust Company (Pulaski Bank), an unsecured creditor, filed a motion to dismiss the bankruptcy case for lack of good faith pursuant to 11 U.S.C. § 707(a) (1988). A trial was held on February 5, 1993, and the matter was taken under advisement.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (1988), and the Court has jurisdiction to enter a final judgement in the matter.

## I

## BACKGROUND

The debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on August 29, 1986, and obtained confirmation of a Chapter 11 plan on December 7, 1987. According to the debtors' plan, Pulaski Bank was a creditor in the Chapter 11 case with an unsecured claim of $61,000.00. The debtors' Chapter 11 plan provided that unsecured creditors would be paid through an "unsecured creditors' fund" administered by the debtors. The plan provided for Pulaski Bank's unsecured claim as follows:

3.2 Class 9 claims are the unsecured claims of PVP, UNB, Worthen, Kitchens, Nesbitt, PBT and NBC. The amount of those claims respectively are: $79,600, $101,435.29, $24,966.54, $900.00, $2,300.00, $61,000.00 and $1,200.00, which shall be paid a guaranteed dividend of $40,380.00 with total dividend being estimated to exceed twenty-five percent (25%) paid as follows:

(a) Debtors shall open an unsecured creditors fund and deposit therein approximately $373.00 for 60 months.

(b) After expiration of the sixty (60) month period, debtors shall deposit to such unsecured creditors' fund $750.00 per month for an additional twenty-four (24) months.

(c) During the eighty-four (84) month period stated herein, debtors will deposit each calendar quarter additional funds. The amount of such deposit shall be determined as follows: Payments under this subpart shall be equal to twenty-five percent (25%) of the net profits of James M. Studdard, M.D., P.A. when gross revenues thereof equal or exceed $22,500.00 per month. Any month in which gross revenues do not equal $22,500.00, all earnings from James M. Studdard, M.D., P.A. shall be excluded from calculating the amount of the deposit required hereunder. Debtors estimate that this payment will produce an additional five thousand dollars ($5,000.00) per year.

Section 3.5 of the plan specifically provided that Dr. Studdard's salary from his professional association would be limited to approximately $5,000.00 per month, of which $750.00 would be allocated to pay unsecured creditors.

Jerry Duncan, Senior Vice–President for Pulaski Bank, stated that the records of the unsecured creditors' fund revealed that Dr. Studdard withdrew a salary from his professional association in excess of the $5,000.00 set forth in his Chapter 11 plan. Duncan testified that from January 1988

through June 1991, the professional association earned $283,610.02 in profits, of which $70,902.50 should have been deposited to the unsecured creditors' fund. Pulaski Bank should have received $21,454.98 through June 1991, but it received only $3,588.26. Duncan testified that following confirmation of the debtors' plan, Pulaski Bank received payments of $96.98 each during January, February, and March of 1988, a payment in September 1990 in the amount of $387.92, and payments of $193.96 from October 23, 1990, until January 17, 1992. No payments have been received since January 17, 1992.

Pulaski Bank filed a lawsuit against the debtors in the Chancery Court of Pulaski County, Arkansas, and obtained a judgment against the debtors. The debtors then filed their petition for relief under Chapter 7. The debtors' Chapter 7 schedules list Pulaski Bank as an unsecured creditor with a claim of $31,500.00.

At the trial of this proceeding, Dr. Studdard admitted drawing a greater salary than permitted under his plan. Dr. Studdard drew an average monthly salary of $11,077.04 from January 1988 to June 1991, while his Chapter 11 plan provided for a salary of approximately $5,000.00 per month.[1] He also testified that he failed to administer the unsecured creditors' fund as provided for in the Chapter 11 plan.

The debtors own a 1983 Buick and a 1980 Ford Van and live in a condominium that was purchased with the Court's approval during the Chapter 11 case. The debtors value their total assets at $167,200.00, and list secured claims of $153,408.00 and unsecured claims of $138,870.00. The debtors' home mortgage payment is $1,700.00 per month, and the principal debt secured by the debtors' home is $129,536.00. Dr. Studdard testified that the home mortgage debt is amortized over a ten year period. Dr. Studdard stated that Mrs. Studdard's and his lifestyles have not changed since they filed the Chapter 11 petition in 1986.

Dr. Studdard valued his interest in the professional association and household goods at $500.00 each, and claimed both as exempt. At the trial, Dr. Studdard acknowledged that he made no real attempt to ascertain the actual value of these two assets. The debtors' schedules indicate no assets available for distribution to unsecured creditors.

The debtors' current monthly income, according to their Chapter 7 schedules, is $8,823.33. The debtors' schedules lists their current expenditures as follows:

| | |
|---|---|
| Rent/home mortgage payments | $1,700.00 |
| .... | |
| Utilities: Electricity and heating fuel | 250.00 |
| Water and sewer | 50.00 |
| Telephone | 250.00 |
| Other: | |
| Cable | 20.00 |
| Home maintenance | 25.00 |
| Food | 400.00 |
| Clothing | 75.00 |
| Laundry and dry cleaning | 75.00 |
| Medical and dental expenses | 125.00 |
| Transportation | 300.00 |
| Recreation, clubs, and entertainment, newspapers, magazines, etc. | 100.00 |
| Charitable contributions | 0.00 |

1. This average does not include $26,000.00 Dr. Studdard withdrew from the James D. Studdard, P.A., Profit Sharing Plan in April of 1991. Although Dr. Studdard listed the $26,000.00 as salary on his financial statements, he testified that the funds were a loan to pay taxes. The profit sharing plan is listed on the debtors' Chapter 7 schedules as a creditor with an unsecured claim of $20,000.00.

Insurance:
Homeowner's or renter's....................................... 12.50
Life ......................................................... 140.00
Health ....................................................... 350.00
Auto.......................................................... 300.00
Other:
        NONE

Taxes:
Real estate (property) taxes.................................... 200.00

Installment payments:
Auto: ........................................................ 722.99
Other:
        NONE
. . . .

Other:
Southwestern Baptist University tuition (Katie) ..................... 1,500.00
Baylor tuition (Shawn)......................................... 2,000.00
Condo fees.................................................... 150.00

TOTAL MONTHLY EXPENSES ................................... $8,745.49

---

The debtors have no priority creditors, and the creditors holding general unsecured claims are as follows:

| | |
|---|---|
| James D. Studdard, P.A., Profit Sharing ........ | $ 20,000.00 |
| PVP Partnership c/o Todd Carter ......... | 32,695.00 |
| Pulaski Bank & Trust... | 31,500.00 |
| Union National Bank.... | 44,675.00 |
| Worthen National Bank | 10,000.00 |
| Total ................. | $138,870.00 |

The debtors spend $3,500.00 per month for their children's college tuition and living expenses, $722.99 for the combined payment of the children's two 1990 Honda automobiles, and $300.00 a month for automobile insurance for the family's four cars. The secured claims for the automobiles used by the debtors' children total $23,872.00.

## II

## DISCUSSION

▮ Pulaski Bank contends that the debtors' petition should be dismissed for lack of good faith pursuant to 11 U.S.C. § 707(a) (1988). Section 707(a) provides the following:

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees and charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

11 U.S.C. § 707(a) (1988).

▮ Subsections 707(a)(1), (2), and (3) are non-exclusive examples of "cause" and the court may dismiss a case on other grounds when cause is found to exist. *Industrial Ins. Serv., Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1126 (6th Cir.1991); *McLaughlin v. Jones (In re Jones)*, 114 B.R. 917, 924 (Bankr.N.D.Ohio 1990); 4 Lawrence P. King et al., *Collier on Bankruptcy*, ¶ 707.03 (15th ed. 1991). The lack of good faith is "cause" for dismissal under 11 U.S.C. § 707(a). *Industrial Ins. Serv., Inc. v. Zick (In re Zick)*, 931 F.2d 1124 (6th Cir.1991); *In re Hammonds*, 139 B.R. 535 (Bankr.D.Colo.1992); *In re Johnson*, 137 B.R. 22 (Bankr.E.D.Ky.1991); *McLaughlin*

v. Jones (In re Jones), 114 B.R. 917 (Bankr. N.D.Ohio 1990).

Several courts have articulated factors to be considered when determining a debtor's good faith, and each case has considered different factors. In *Industrial Ins. Serv., Inc. v. Zick (In re Zick)*, 931 F.2d 1124 (6th Cir.1991), the Sixth Circuit Court of Appeals upheld a district court's finding of bad faith based upon the following factors:

(1) the debtor's manipulations which reduced the creditors ... to one; (2) the debtor's failure to make significant lifestyle adjustments or efforts to repay; (3) the fact that the petition was filed clearly in response to [the creditor's] obtaining a [judgment]; and (4) the unfairness of the debtor's use of Chapter 7 under the facts of this case.

*Industrial*, 931 F.2d at 1128.

"The facts required to mandate dismissal based upon a lack of good faith are as varied as the number of cases." *In re Bingham*, 68 B.R. 933, 935 (Bankr.M.D.Pa. 1987) (citing *In re Zahniser*, 58 B.R. 530 (D.Colo.1986)). *See also Morgan Fiduciary Ltd. v. Citizens & S. Int'l Bank*, 95 B.R. 232 (S.D.Fla.1988), *aff'g, In re Morgan Fiduciary Ltd.*, No. 87–02109 (Bankr. S.D.Fla. Aug. 4, 1987).

In this case, Dr. Studdard admits that he failed to comply with the Chapter 11 plan. He paid himself a salary substantially higher than his plan allowed and he ceased making payments to the unsecured creditors' fund altogether in January of 1992. He offers no justification for his refusal to comply with the terms of the Chapter 11 plan.

The debtors have sufficient resources to pay their creditors. For example, if the debtors ceased providing each child with an automobile and lowered college payments by fifty percent, there would be sufficient income to pay all unsecured creditors in full in less than five years.[2] Under this formula, the debtors would still be able to contribute $21,000.00 per year for their children's higher education expenses.

█ A parent's desire to provide a child with an automobile and a college education at the institution of his or her choice is generally laudable, but under these circumstances, the amount of the debtors' expenditures is excessive. The debtors owe no duty to their children to provide them with nonessential luxuries while the debtors' unsecured creditors receive no payment on their just claims.[3] Pulaski Bank relied on the debtors' good faith when the debtors proposed their Chapter 11 plan, and allowed a portion of its claim to be discharged without objection. The debtors' Chapter 11 plan is rendered illusory if the debtors, after obtaining a discharge, avoid their obligations under the plan by the expedience of a subsequent filing under Chapter 7 of the Bankruptcy Code. The debtors' resort to Chapter 7 under these circumstances is unfair.

█ Although the jurisdictional requirement of good faith is not explicitly stated in the Bankruptcy Code, it is inherent in the purposes of bankruptcy relief. *Local Loan v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *McLaughlin v. Jones (In re Jones)*, 114 B.R. 917 (Bankr. N.D.Ohio 1990).

The Bankruptcy Code is intended to serve those persons who, despite their best efforts, find themselves hopelessly adrift in a sea of debt. Bankruptcy protection was not intended to assist those who, despite their own misconduct, are attempting to preserve a comfortable standard of living at the expense of their creditors. Good faith and candor are

---

**2.** In addition, other adjustments or reallocation of resources could be made.

**3.** Spending $50,000.00 per year for their children's automobiles and educations is especially egregious considering the debtors have no legal obligation to do so. A parent is neither legally obligated to support his child, nor pay for the child's college education if the child has reached the age of majority and has no physical or mental handicaps. *Riegler v. Riegler*, 259 Ark. 203, 532 S.W.2d 734, 740 (1976); *Mitchell v. Mitchell*, 2 Ark.App. 75, 616 S.W.2d 753, 755 (1981). The debtors' children have both reached the age of majority, and there is no evidence that they are physically or mentally handicapped.

necessary prerequisites to obtaining a fresh start. The bankruptcy laws are grounded on the fresh start concept. There is no right, however, to a head start.

*Industrial Ins. Serv., Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1128–29 (6th Cir.1991) (citation omitted). Bankruptcy provides relief "to the poor but honest debtor who has tried his best to pay his creditors but failed." *Filmar v. White (In re White)*, 63 B.R. 742, 744 (Bankr.N.D.Ill.1986); *In re Khan*, 35 B.R. 718, 719 (Bankr.W.D.Ky. 1984). Pursuant to 11 U.S.C. § 707(a) (1988), the debtors' petition is not filed in good faith, and the case is hereby dismissed.

IT IS SO ORDERED.