In re Ferrel A. LANDES, Debtor.

Bankruptcy No. 95–19741DAS.

United States Bankruptcy Court,
E.D. Pennsylvania.

May 14, 1996.

Natale F. Carabello, Jr., Philadelphia, PA, for Debtor.

Arthur P. Liebersohn, Trustee, Philadelphia, PA.

Andrew N. Schwartz, Philadelphia, PA, Trustee in In re Franconia Propane Gas Co.

Jonathan K. Hollin, King of Prussia, PA, for Movants.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA.

## OPINION

DAVID A. SCHOLL, Chief Judge.

*A. INTRODUCTION*

LOLA LANDES ("the Wife") and GREGORY LANDES (collectively "the Landeses"), the estranged wife and son, respectively, of FERREL A. LANDES ("the Debtor"), and GEA REALTY, INC. ("GEA," with the Landeses, "the Movants"), have filed a motion seeking to dismiss the Debtor's voluntary Chapter 7 bankruptcy case "due to a lack of good faith" ("the Motion"). The Motion thus requires us to review our previous holding in *In re Latimer*, 82 B.R. 354, 363–64 (Bankr.E.D.Pa.1988), questioning whether a "good faith filing" requirement ("GFFR") can properly be read into Chapter 7 of the Bankruptcy Code, specifically into 11 U.S.C. § 707(a).

As in our recent decision reaffirming our belief that no GFFR exists for Chapter 13 cases (or, for that matter, in Chapter 11 cases as well), *In re Lilley*, 181 B.R. 809 (Bankr.E.D.Pa.), *rev'd on other grounds*, 185 B.R. 489 (E.D.Pa.1995), *appeal docketed*, No. 95–1782 (3d Cir.), we reaffirm our *Latimer* holding and conclude even more positively that this case is an object lesson as to why no GFFR should be appended to Chapter 7 of the Code.

However, as we did in another Chapter 13 case, *In re Oglesby*, 161 B.R. 917, 924–27 (Bankr.E.D.Pa.1993), *aff'd*, C.A. No. 94–0617 (E.D. Pa. April 7, 1994), assuming *arguendo* that a GFFR is viable, we will also analyze the Movants' position under the most popular tests utilized by those courts which choose to recognize a GFFR: (1) the multi-pronged test; and (2) the "frustrate bankruptcy purpose" test. We alternatively conclude that the Motion should be denied under application of either of these tests on their own terms as well.

## B. PROCEDURAL AND FACTUAL HISTORY

The Debtor filed the instant bankruptcy case on December 13, 1995. Much of the text of the Motion and most of the trial focused on two prior cases involving the Debtor, his own prior case, Bankr. No. 94–10299DAS ("*Landes I*"); and a case of his closely-held corporate retail propane gas service business, Franconia Propane Gas Co., Bankr. No. 94–10294DAS ("the *Franconia Case*"), both of which were filed as voluntary cases under Chapter 11 of the Bankruptcy Code on January 24, 1994.

The *Franconia Case* was converted to a Chapter 7 case on August 5, 1994, when Franconia failed to timely file its plan and disclosure statement, as it had earlier been directed. On September 29, 1994, we denied Franconia's motion to voluntarily dismiss that case, sustaining the position of the Landeses, contrary to the position at that time of Andrew Schwartz, Esquire, the interim trustee ("the Franconia Trustee"), that the apparent efforts of Landes and a son-in-law, Michael Davis, to transfer Franconia's assets to a new corporate entity could not be countenanced, despite the anticipated difficulties of case administration this result might pose.

At that hearing, we commented unfavorably on the credibility of the Debtor. Immediately thereafter, on October 3, 1994, we sent a report, pursuant to 18 U.S.C. § 3057(a), to the local United States Attorney ("the US Atty"), requesting that his office investigate the Debtor and Davis for bankruptcy fraud. Ultimately, the US Atty took no action, advising this court that it considered the Debtor's loss of Franconia punishment enough for any transgressions.

At present, the Franconia Trustee is in the last stages of collecting assets in that case prior to the scheduled date for his filing of the final audit papers, June 3, 1996. During the course of that case, the Franconia Trustee hired a former competitor of Franconia, Farm & Home Oil Co. ("F & H"), to temporarily operate the Debtor, as a prelude to F & H's ultimate purchase of virtually all of Franconia's assets from the Franconia Trustee. The Debtor has therefore been shorn of his business, which he contended produced profits of over $1 million annually and was worth $4 million.

The Debtor's request to voluntarily dismiss *Landes I* was granted on September 28, 1994, with the consent of the Landeses upon the Debtor's agreement not to refile any other bankruptcy cases in the next 180 days. That case was recently reopened for the sole purpose of requiring Natale F. Carabello, Esquire ("the Debtor's Counsel"), counsel for the Debtor in both of his cases and originally counsel for Franconia until the hire of Ronnie Schwartz–Albright, Esquire ("Franconia's Counsel"), to avoid a possible conflict, to require both the Debtor's Counsel and Franconia's Counsel to file necessary fee applications. The Debtor's Counsel represents the Debtor in the instant case as well.

After the meeting of creditors of January 17, 1996, in the instant case, Arthur P. Liebersohn, Esquire ("the New Case Trustee"), filed a report of no assets. The deadline for filing objections to the Debtor's discharge or to the dischargeability of certain debts was fixed at March 18, 1996.

On February 15, 1996, the instant Motion and a supporting Memorandum of Law, which did not cite *Latimer, Lilley,* or any cases decided by this court ("the Memo"), was filed. It was joined by the Franconia Trustee on March 18, 1996.

On February 16, 1996, the Franconia Trustee also filed an objection to the Debtor's claim that a farm and residence, a separate residence, the former place of Franconia's business, a hunting camp, four tractors, clothing, and a shotgun, valued at a total of about $875,000, were exempt, under 11 U.S.C. § 522(b)(2), as property held by the entireties with the Wife. On February 27, 1996, and March 18, 1996, the Landeses and the Franconia Trustee, respectively, filed motions to extend their time to object to the Debtor's discharge and the dischargeability of their respective debts until after the instant Motion was decided ("the Extension Motions").

The instant Motion, the Objections, and the Extension Motions all came before this court for hearings on April 18, 1996. The

hearings on the Objections and the Motions to Extend were continued until May 14, 1996. We spent several hours receiving the record on the instant Motion. Thereafter, the parties were given until April 25, 1996 (the Debtor), and May 2, 1996 (the Movants), to submit a response and supplement, respectively, to the Memo. We nevertheless note that, on May 7, 1996, apparently taking a cue from this court that the Extension Motions were likely to be granted, the Movants filed an adversary proceeding, Adv. No. 96–0616, challenging the Debtor's discharge under 11 U.S.C. §§ 727(a)(4), (a)(7) (as regards the Debtor's actions in the *Franconia Case* ), and the dischargeability of the Debtor's various obligations to them under §§ 523(a)(2), (a)(5), (a)(6), and (a)(15). This proceeding is scheduled for a trial on July 9, 1996.

The hearing on the Motion featured the Movants' interrogation of the Debtor, called as a (literally) hostile witness; David L. Ladov, Esquire, the Wife's matrimonial counsel; and the Franconia Trustee. The testimony of the Debtor, perhaps partially attributable to a stroke which he allegedly suffered shortly after the hearing of September 28, 1994, in the *Franconia Case,* and in part attributable to incessant and often frivolous objections from the Debtor's Counsel, was marked by hostility and recitation of less than lucid replies. Much of it focused on the events of the *Franconia Case.*

The Debtor, apparently in his mid–60's, did not conceal his dissatisfaction with state court orders in his matrimonial case with his wife and what he perceived as the "scorched earth" tactics of the Movants' counsel, which had resulted in the total loss of his highly-profitable business. There was no evidence that he had any present income besides about $1,000 monthly in Social Security benefits, offset by over $3,000 in alleged monthly expenses. Subjects of particular focus during this testimony were (1) the Debtor's disavowal of a 1991 stipulation, though reduced to judgment in the state court, to pay $480,-000 to the Wife in full settlement of her claims; (2) the Debtor's listing of Harleysville National Bank ("Harleysville") as a secured creditor in the amount of about $250,-000 on his bankruptcy Schedules despite the

alleged liquidation of this obligation, which was in the nature of an indemnity of Franconia, in the course of administration of the *Franconia Case;* and (3) 1993 payments of what appeared to be certain personal obligations of the Debtor, each between $25 to $200, with Franconia's funds. Questions regarding the Debtor's motivations for his bankruptcy filings were met mostly with the response that these actions were taken on advice of counsel.

Ladov clarified the course of the state court domestic actions between the Wife, who was apparently the plaintiff in a divorce action involving complex property-distribution issues, and the Debtor, which commenced in 1987. The filing of *Landes I* had stayed a scheduled master's hearing on equitable distribution in that case. While the state court proceedings advanced to a master's hearing and report after the dismissal of *Landes I,* the instant case had stayed a hearing on the Debtor's objection to the master's report before the state court. As to the Movants' motivation in filing the instant Motion, as opposed to their filing of a challenge to the Debtor's discharge or dischargeability, Ladov appeared to indicate that he believed that the Wife's cause of action under § 523(a)(15), the most obviously-applicable Code section, was questionable.

The Franconia Trustee, like the New Case Trustee, conceded that the April 18, 1996, hearing was likened to a messy dischargeability complaint trial. The Franconia Trustee related the difficulties encountered by F & H and him in prying the assets of Franconia out of the hands of the Debtor and Davis. The Debtor was characterized as one of the most recalcitrant debtors that the Franconia Trustee has ever encountered, necessitating motions to obtain various contempt orders, mostly engineered by F & H's counsel. The Franconia Trustee indicated that his support for the Motion was not philosophical, but arose from his assessment that, unless the state-court equitable distribution process were accelerated, he would have no means of bringing the Debtor's share of the entireties' property into the *Franconia Case* estate.

## C. DISCUSSION

### 1. THE LATIMER DECISION: NO GFFR

The Movants, like most of the courts embracing the concept of the GFFR, cites, as the statutory basis for same, 11 U.S.C. § 707(a), which reads as follows:

§ 707. Dismissal

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees or charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

In *Latimer, supra,* 82 B.R. at 361, we allowed that,

[d]espite an apparent statement by former Chief Judge Goldhaber in *In re Yancey,* 46 B.R. 621, 623 (Bankr.E.D.Pa.1985), that the specific instances set forth in § 707(a) are *exclusive,* we will accept the creditors' argument that the term "cause," in § 707(a), means something in addition to the specific instances recited.

Subsequently, *id.* at 363, we referenced our statement in *In re Ford,* 78 B.R. 729, 733 (Bankr.E.D.Pa.1987), citing *In re Flick,* 14 B.R. 912, 916 (Bankr.E.D.Pa.1981) (TWAR-DOWSKI, J.), that there is no GFFR in Chapter 13 cases. We also questioned our prior statements indicating the presence of a GFFR in Chapter 11 cases in *In re Smith,* 77 B.R. 496, 500–01 (Bankr.E.D.Pa.1987). *See Lilley, supra,* 181 B.R. at 811, citing *In re 1606 New Hampshire Ave. Associates,* 85 B.R. 298, 308 (Bankr.E.D.Pa.1988). *See also In re Victoria L.P.,* 187 B.R. 54 (Bankr. D.Mass.1995) (adamantly rejecting a GFFR in Chapter 11). We also quoted, 82 B.R. at 363, with approval, the statement in *In re Kragness,* 63 B.R. 459, 465 (Bankr.D.Or. 1896), that

"[a] different [lesser] level of conduct may be required for debtors in a Chapter 7 liquidation where all non-exempt assets are surrendered to a trustee for liquidation as opposed to Chapter 11 and Chapter 13 cases where the debtor normally remains in possession of non-exempt assets."

We then concluded, *id.* at 363–64, that,

[a]pplying the reasoning of *Ford* and *Flick, supra,* and observing that §§ 1112(b)(2), (3), (4), and (5) permit dismissal of a case in which no confirmable plan is presented within a reasonable time-frame, causes us to question whether there is any . . . "good faith" requirement. . . .

In any event, any concept of "good faith," even where it is applicable, should embrace only the narrow concepts of fraudulent misrepresentations or serious non-disclosures of material facts, per *Smith, supra;* and *In re Gathright,* 67 B.R. 384, 387–88 (Bankr.E.D.Pa.1986), *appeal dismissed,* 71 B.R. 343 (E.D.Pa.1987). It should not, as we indicated in *Gathright,* "address elements which are properly dealt with under separate provisions of the Code," 67 B.R. at 389, such as "substantial abuse," which is dealt with exclusively in § 707(b).

In answering the question of what conduct might then be within the residual scope of § 707(a), we opined, *id.* at 364, that,

[w]e believe that included therein is a large category of conduct which expressly violates Code provisions, such as those recited in *Kragness,* 63 B.R. at 465, *e.g.,* failure of the debtor to perform the duties enumerated in § 521, or unreasonable delay. *Compare Smith, supra,* 77 B.R. at 501–03. Where the conduct of the debtor is ground for denial of a discharge, under § 727, cause for dismissal may exist. *Cf. In re Schwartz,* 58 B.R. 923 (Bankr.S.D.N.Y. 1986). Also, there may be instances where debtors unjustifiably fail to comply with specific orders of this court.

## 2. ALTERNATIVE APPROACHES TO THE GFFR ISSUE

*Latimer* has received a mixed reception from other courts. There is one known prior case reaching the same result, *In re Markizer*, 66 B.R. 1014, 1020 (Bankr.S.D.Fla.1986). However, *Latimer's* reasoning was rejected outright in *In re Zick*, 931 F.2d 1124, 1127 (6th Cir.1991). On the other hand, the court in *In re Khan*, 172 B.R. 613, 622 (Bankr. D.Minn.1994), allows that "[t]here is much to be said for the *Latimer* court's reservations" in accepting a Chapter 7 GFFR. *Latimer* is quoted from with respect in *In re Huckfeldt*, 39 F.3d 829, 832 (8th Cir.1994), which follows *Khan* in recognizing GFFR, but one which is narrower than that developed in *Zick* and many of the other cases cited by the Movants.

One circumstance has admittedly changed since the publication of our decision in *Latimer*. At that time, we were unable to uncover any reported decisions dismissing Chapter 7 cases for failure to satisfy the GFFR. 82 B.R. at 361. As the cases collected by the Movants and *e.g., Khan, supra*, 172 B.R. at 620–21, warrant, the presence of Chapter 7 cases subjected to the GFFR has proliferated since the date of publication of *Latimer*. The question nevertheless remains whether this is a healthy development or a philosophical weed, ripe for extinction.

A local district court has, at least in dictum, honored the GFFR. *In re Marks*, 174 B.R. 37, 40 (E.D.Pa.1994) (bankruptcy court's denial of a GFFR motion on its merits affirmed). The closest that the local Court of Appeals has come, prior to its opportunity to address the issue in a Chapter 13 context in *Lilley, supra*, is dictum in a Chapter 11 case, *In re Brown*, 951 F.2d 564, 571 (3d Cir.1991) (bankruptcy court's granting of a GFFR motion reversed and remanded for further factual findings). Other courts in the Circuit have also applied the GFFR in Chapter 7 cases. *See In re Burns*, 169 B.R. 563, 567–69 (Bankr.W.D.Pa.1994); *In re Campbell*, 124 B.R. 462, 464–65 (Bankr.W.D.Pa.1991); and *In re Bingham*, 68 B.R. 933, 935–36 (Bankr. M.D.Pa.1987). *Cf. In re Mock, Mock v. Humnet, Inc.*, Bankr. No. 95–18946 SR, Adv. No. 95–0937, slip op. at 12–14 (Bankr.E.D.Pa.

April 19, 1996) (RASLAVICH, J.); and *In re Dami*, 172 B.R. 6, 10 (Bankr.E.D.Pa.1994) (SIGMUND, J.) (GFFR applied to dismiss Chapter 13 cases).

The cases which have recognized a GFFR appear to break into two camps. In the one camp, a broad GFFR is recognized, and a growing number of "factors" or "characteristics" are dredged up for consideration in determining whether to dismiss a particular case on that basis. The Movants focus on four cases in their briefs: *Burns, supra; In re Studdard*, 159 B.R. 852 (Bankr.E.D.Ark. 1993); *In re Hammonds*, 139 B.R. 535 (Bankr.D.Colo.1992); and *In re Johnson*, 137 B.R. 22 (Bankr.E.D.Ky.1991). Of these, *Studdard*, 159 B.R. at 856, quoting *Zick, supra*, 931 F.2d at 1128, references, as factors to be considered,

"(1) the debtor's manipulations which reduced the creditors ... to one; (2) the debtor's failure to make significant lifestyle adjustments or efforts to repay; (3) the fact that the petition was filed clearly in response to [the creditors'] obtaining a [judgment]; and (4) the unfairness of the debtor's use of Chapter 7 under the facts of this case."

*Hammonds, supra*, 139 B.R. at 542, lists the following as GFFR "characteristics:"

(1) one or few creditors in number; modest debt in amount relative to assets or income; (2) lack of candor and completeness in debtor's statements and schedules; (3) improper or unexplained transfers, or absence, of debtor's pre-petition assets; (4) multiple case filings or other extraordinary procedural gymnastics; and (5) existence of a predominant dispute between debtor and a single creditor.

These cases, representing the multipronged test favored by the Movants, are, for the most part, roundly criticized in *Khan, supra*. *Khan* thusly begins, 172 B.R. at 621, by deflating the high-sounding basis for these decisions, reminiscent of some of the statements in the Movants' briefs:

the analysis in many of these opinions opens with a sweeping pronouncement that good faith in the filing of a Chapter 7 petition is "an implicit jurisdictional re-

quirement." *E.g., In re Zick,* 931 F.2d at 1126–1127; *In re Studdard,* 159 B.R. at 856; *In re Hammonds,* 139 B.R. at 541, *In re Campbell,* 124 B.R. at 464; *In re Rognstad,* 121 B.R. [45,] at 49 [ (Bankr.D.Haw. 1990) ]; *In re Brown,* 88 B.R. 280, 283 (Bankr.D.Haw.1988); *In re Khan,* 35 B.R. [718,] at 719 [ (Bankr.W.D.Ky.), *remanded,* 751 F.2d 1162 (6th Cir.1984) ]. This sentiment sounds all very noble, but it has more resonance for a layperson's perception of a judicial process than for a professional's understanding of it. Such pronouncements are never accompanied by a statutory citation, and for a good reason: there is none.

Then, based upon legislative history and the precept of statutory construction that Congress must be deemed to have limited the remedies for certain debtor conduct to those specified in the Code, the *Khan* court, 172 B.R. at 624–25, concludes that consideration of the debtor's financial resources or potential grounds for denial of discharge or dischargeability should *not* be considered in applying the GFFR. However, being unwilling to eliminate the GFFR entirely, the *Khan* court states that,

> "[g]ood faith" and its absence necessarily being subjective factors, the Court should look first at the debtor's manifested attitude toward the integrity of the bankruptcy process. *Cf. In re Kellogg Square Partnership,* 160 B.R. 343, 353–354 (Bankr. D.Minn.1993) (construing good faith requirement of 11 U.S.C. § 1129(a)(3), for confirmation of Chapter 11 plan); *In re Estus,* 695 F.2d 311, 316 (8th Cir.1982), *In re Sitarz,* 150 [B.R.] 710, 721 (Bankr. D.Minn.1993), and *In re Cordes,* 147 B.R. 498, 503 (Bankr.D.Minn.1992) (all construing good faith requirement of 11 U.S.C. § 1325(a)(3), for confirmation of Chapter 13 plan). The real question should be whether the debtor is in bankruptcy with an intent to receive the sort of relief that Congress made available to petitioners under the chapter in question—subject, of course, to any statutory limitations on the extent of that relief—and is willing to responsibly carry out the duties that Congress imposed on debtors as the cost of receiving such relief. *Cf. In re Kellogg*

*Square Partnership,* 160 B.R. at 354–57; *In re Sitarz,* 150 B.R. at 721; *In re Cordes,* 147 B.R. at 503.

*Cf. In re Clinton Centrifuge, Inc.,* 72 B.R. 900, 905 (Bankr.E.D.Pa.1987) (FOX, J.) (Chapter 11 case; court rejects GFFR analysis based on a list of factors and submits that "the court's only inquiry is to determine whether the debtor seeks to abuse the bankruptcy law by employing it for a purpose for which it was not intended").

As is noted at page 860 *supra,* the *Huckfeldt* court "agree[s] with the narrow cautious approach to bad faith adopted in *Khan.*" 39 F.3d at 832. However, the *Huckfeldt* court goes further and also criticizes the very notion of "framing the issue in terms of bad faith." *Id.* Instead, it states that "the § 707(a) analysis is better conducted under the statutory standard, 'for cause.'" *Id.* At a certain point, this analysis is very close to that of this court in *Latimer, supra,* where we allowed that a dismissal, "for cause" under § 707(a), would be justified in certain circumstances. *See Latimer, supra,* 82 B.R. at 364, quoted at page 860 *supra.*

### 3. *APPLICATION OF THE ALTERNATIVE GFFR TESTS TO THE INSTANT FACTS: THE INSTANT MOTION MUST BE DENIED UNDER ANY OF THE TESTS*

#### a. The Latimer Test

We must now proceed to apply (1) the "for cause" standard of *Latimer;* (2) the "frustrate bankruptcy purpose" GFFR test of *Huckfeldt, Khan,* and *Clinton Centrifuge;* and (3) the multi-pronged GFFR test, to the instant facts.

▬ The *Latimer* test focuses on the Debtor's putative violations of Code provisions. Arguably, the record contains some evidence which has some pertinence to this inquiry. The evidence of the Debtor's course of conduct in the *Franconia Case* evinces violations of the Code by the Debtor in that case. There is also an attempt to show that the Harleysville claim was improperly expanded, presumably to make the entireties property appear more heavily encumbered than it actually is.

■ However, these efforts fail. There is no evidence of record which establishes beyond question that the Debtor's obligations to Harleysville are totally extinguished. Notably, the final audit papers have not yet been filed in the *Franconia Case.* In any event, the duty of a debtor is to list any possible obligations on the Schedules. *See* 3 COLLIER ON BANKRUPTCY, § 521.03, at 521–12 (15th ed. 1995). We cannot fault the instant Debtor for listing even a remotely-contingent obligation to Harleysville on his Schedules in fulfillment of that duty. Practically, we observe that the potential exclusion of Harleysville as a creditor in no sense appeared to deceive the New Case Trustee in his assessment of this case as a no-asset case.

■ We also conclude that the Debtor's course of conduct in the *Franconia Case,* in and of itself, cannot be utilized as a means to bar his filing of the instant case. Many individuals file bankruptcy as a result of liability from heinous pre-petition deeds which violate both civil and criminal law. However, there is no exclusion of "bad persons" from the benefits of bankruptcy. It should not matter that the transgressions of a "bad person" occurred in another separate pre-petition bankruptcy case. *Cf. In re Madison,* 184 B.R. 686, 690–92 (Bankr.E.D.Pa. 1995) (the concept that a pre-petition waiver of bankruptcy benefits violates public policy must be relevant to prior bankruptcy litigation as well as prior nonbankruptcy litigation). Therefore, while we allowed the Movants to make a record regarding the Debtor's conduct in the *Franconia Case,* the failure to link that conduct with conduct which violated precepts and provisions of the Code in the context of *this* case must result in denial of the Motion under this court's own *Latimer* test.

■ We could of course stop at this point and deny the Motion, since we not only do not intend to abandon the precepts which we set forth in *Latimer* but also we wish to make it clear that we recognize no GFFR as such in Chapter 7 cases. However, in the interests of discouraging appeals in the context of controversies between the Debtor and the Landeses, which have already been over-litigated, and have resulted in the loss of the most valuable asset owned by the Debtor and the Landeses, *i.e.,* Franconia, we will proceed to demonstrate that this Motion would be denied under the "frustrate bankruptcy purpose" test and the multi-pronged test of the GFFR as well.

### b. *The "Frustrate Bankruptcy Purpose" Test*

■ In at least a small portion of the record, the Movants attempted to establish that the Debtor filed this bankruptcy case for the sole purpose of staying the state court distribution proceeding. Under the "frustrate bankruptcy purpose" test, proof of such a motivation might win the day. A court adopting the "frustrate bankruptcy purpose" test could conceivably reason that the "real" purpose of a Chapter 7 bankruptcy is discharge of debts and that such a filing, for the sole purpose of obtaining relief from the stay, should be forbidden.

■ We should observe, if it were not already obvious, that we do not subscribe to the GFFR test, although we consider it an improvement over the multi-pronged (non)-test. Our differences are both philosophical and practical. Philosophically, we are unwilling to assign a value to the various purposes served by, and benefits provided to, debtors under the Bankruptcy Code. The Code provides what it provides and debtors are free to take from it whatever benefits of which they can avail themselves. We do not consider it appropriate to determine one benefit as more "proper" than another. Practically, we find it a very difficult proposition to first prove and then decide what a debtor's motives for filing a bankruptcy were. The instant Debtor, for example, presents himself as a complex and confused individual, guided by counsel whose conceptions of bankruptcy seem almost equally confused.

However, assuming *arguendo* that the "frustrate bankruptcy purpose" GFFR is applied, and that it is further assumed that, if the Debtor had filed this case only to stay the equitable distribution proceeding satisfied this test, we find the record insufficient to suggest such a basis for dismissal for several reasons. First, the automatic stay in

a Chapter 7 case is temporary at best. Were it not for the presence of this Motion, and had the Movants earlier directed their energy to litigation of a discharge/dischargeability proceeding, this case could easily have been closed by now, and the automatic stay arising from it would be history. Hence, this case, and almost any Chapter 7 no-asset case, is simply not a vehicle to attain the hypothetical benefit of a lengthy automatic stay.

Secondly, we note that the Movants have displayed no particular concern about the presence of the stay. In addition to proceeding with a litigation strategy which appears designed to preclude the swift termination of the stay as a matter of law, they have not moved for relief from the automatic stay during the pendency of this case. This course of conduct suggests that the Movants recognize the alleged purpose of the benefits of the stay as ineffectual, and that they care too little about the presence of such a temporary stay to do anything about it.

Finally, we doubt whether the benefits of the stay *were* a prime motivating factor in the Debtor's filing. Rather, as Ladov recognized, the Debtor may well achieve discharge of his obligation to the Wife arising out of the frustrated 1991 distribution settlement, despite the presence of § 523(a)(15). While the Wife understandably dislikes the prospect of the discharge of her obligation, the purpose of obtaining a discharge would appear to be, in the eyes of a "frustrated bankruptcy purpose" GFFR court, a "legitimate" purpose. Therefore, we conclude that such a court would not dismiss this case on the basis of the instant record.

### c. The Multi–Pronged Test

All that remains is analysis of the Motion under the multi-pronged test(s), which appear(s) to be the preferred approach of the Movants. This court, as is now obvious, has great difficulties with accepting the application of this test as a legitimate undertaking of a bankruptcy court. It is bad enough for a court to focus on one difficult and irrelevant inquiry, *i.e.*, a debtor's motivations for filing bankruptcy. It is far more wasteful, and thus poorly advised, to attempt to focus on a series of often difficult and irrelevant inquiries, with no guidelines regarding the weight of the different factors. Nor is it helpful, at least to the senses of this court, to introduce a "smell test," as the Movants suggest. Smell is an adaptive sense. What smells bad to one person might be perfume to another. Rather, it appears to us that a "smell test" is simply the ultimate surrender to moralistic selectivism and an abdication of principled decision-making, *i.e.*, it smells bad, I don't like it, get it out of here, don't ask me for reasons. We suggest that decision-making must be more principled and orderly than that.

The prongs of a multi-pronged approach are themselves often a moving target. It is probably impossible for us to search out every prong invoked by every court using this approach. Rather, we will focus on only the cases and, as it were, those prongs which protrude through the Movants' briefs.

This discussion brings to mind the Movants' contention that the Debtor has the burden of proving "good faith," rather than their having the burden of proving "bad faith," once they have placed the GFFR in issue. Despite some support for this reasoning in *Marks, supra,* 174 B.R. at 40; and *Bingham, supra,* 68 B.R. at 935, the controlling authority cited in support of this principle, *In re Holi–Penn, Inc.,* 535 F.2d 841, 844 (3d Cir.1976), was a case under Chapter X of the predecessor Bankruptcy Act, which had an express and clearly-defined good faith filing requirement. Since the GFFR, per the multi-pronged test, has so many facets, it is virtually impossible for the Debtor to guess what they might all be, much less anticipate and then disprove them all. Practically, no debtor should be commandeered to prove the reason, or disprove all of the "unacceptable" reasons, for his appearance in the bankruptcy court as prerequisite for being there, unlike any other litigant. In any event, the instant lengthy hearing contains enough evidence that we need not rest our decision on who has the burden of proof.

In their initial brief, the Movants focus on *Hammonds,* the *Campbell* and *Burns* decisions of Judge Markovitz, and the factors referenced in *Hammonds* and quoted at page 860 *supra.* In their reply brief, they focus

on *Studdard, Johnson,* and the alternative list of "characteristics" appearing in *Studdard,* quoted at page 860 *supra.*

A common theme runs through the facts of *Hammonds, Campbell, Studdard,* and *Johnson.* The respective courts, in these cases, are offended that the particular debtors have liberal incomes and will leave bankruptcy with those substantial incomes and assets intact. *See Studdard, supra,* 159 at 853–55, 856; *Hammonds, supra,* 139 B.R. at 542–43; *Johnson, supra,* 137 B.R. at 24; and *Campbell, supra,* 124 B.R. at 464–65. The problem in *Burns* is more unique: the court is offended because the debtor failed to declare that he was previously denied a discharge of the debts listed once again in the case presently before the court, or even mention his prior unsuccessful case, in his Schedules. 169 B.R. at 568–69.

We will not prolong our quarrel with *Hammonds, Campbell, Studdard,* and *Johnson* on their facts. *Khan, supra,* 172 B.R. at 622–24, provides what we find an irrebuttable argument that a debtor's income and assets are the one issue which should expressly *not* be relevant in a GFFR analysis under § 707(a), as opposed to possibly an analysis under other Code sections, notably 11 U.S.C. § 707(b). As to *Burns,* it seems to us that the *Burns* debtor could not hope to accomplish much by filing a second bankruptcy after a denial of a discharge in an earlier case, making the second case a rather harmless, if offensive, target. Also, a good argument could be made that the *Burns* debtor's conduct violated § 707(a)(3) or fell within the scope of conduct which we, in *Latimer,* as quoted at page 860 *supra,* indicated might be within the residual scope of § 707(a).

The difficulty in applying the reasoning of these cases to the instant facts is that the Debtor does *not,* at least any longer, have a large income, nor does he have assets of any significant value in addition to those owned by the entireties with the Wife. His business and his sole source of income, Franconia, was taken from him in the course of the *Franconia Case.* His only presently-reported income is Social Security benefits of about $1,000 monthly, which is far exceeded by his reported monthly expenditures. The accura-cy of neither the Debtor's stated income nor his expenditures have been placed into issue. It is therefore difficult for us to see where there is any parallel between the Debtor and the debtors in those aforementioned cases. We also note that, unlike the *Burns* debtor, the Debtor was not denied a previous discharge and is not accused of omitting anything nearly so material as the fact of such a prior case from his Schedules.

Turning to the list of factors or characteristics of cases violative of the GFFR requirements in *Studdard* and *Hammonds,* most of which are not really relevant to the respective courts' analyses in those cases, we find none of these factors or characteristics present in this record. With respect to the number of creditors, we find a significant number of creditors on the Debtor's Schedules in addition to the Landeses. These include four substantial credit card holders, local real estate and federal income tax entities, and mortgagees on the farm and residence and the other residence listed. The joinder of GEA, a mortgagee, in the Motion, as well as the presence of the Franconia Trustee, are indicative of the presence of creditors of the Debtor other than the Landeses. In any event, we perceive no Code provision precluding a filing on the ground that a debtor has a low number of creditors or even only a single creditor.

With respect to the elements of a failure to make lifestyle adjustments or of having modest debt relative to income, we have already commented on the Debtor's current poverty, and his lack of assets not jointly owned with the Wife. The Debtor has made profound lifestyle adjustments since 1994. Whatever efforts the Debtor might have made to transfer Franconia's assets to remain in control of them, they were beaten back in the administration of the *Franconia Case.*

The Movants charge the Debtor with "extraordinary procedural gymnastics," arising out of the presence of three bankruptcy cases involving him, *i.e., Landes I,* the *Franconia Case,* and the instant case in the past two years. We perceive none. The course of the *Franconia Case* was wrested from the Debtor as of the date of its conversion. The result of liquidation was accomplished in

spite of the Debtor's protests. In gymnastics terms, this result would be classified as a "fall."

*Landes I* was dismissed under conditions and terms specifically agreed to by the Landeses. The Debtor adhered to the 180–day bar on refiling to which he agreed as a condition to the order dismissing *Landes I.* The implication of a 180–day bar on filing, to the extent that it is enforceable, *but see Madison, supra,* 184 B.R. at 690–92, is that a debtor *may* refile after the expiration of the 180–day bar period. The Debtor refiled over 500 days after the dismissal of *Landes I.*

Finally, there is not much in the way of gymnastics that a Chapter 7 debtor can do. His non-exempt assets were and still are subject to being distributed by the New Case Trustee. Unlike the Franconia Trustee, the New Case Trustee apparently perceives no practical benefit in keeping this case open to distribute assets which the Debtor will receive in equitable distribution.

We are prepared to make, in our accompanying order, one dispensation to the Movants and the Franconia Trustee to avoid any potential for procedural gymnastics. We have concluded that, as a condition for denial of the instant Motion, we will grant the Extension Motions. We will, accordingly, allow complaints to be filed by the Movants and the Franconia Trustee on or before May 24, 1996, challenging the Debtor's discharge or. the dischargeability of certain debts. We believe that the pendency of the instant Motion was indeed grounds to delay filing such complaints. *See In re Wilson,* 1994 WL 282964 (Bankr.E.D.Pa. June 17, 1994) (short, timely requests for extensions for filing discharge/dischargeability complaints should be liberally granted in the absence of bad faith by the movants). The Landeses have, of course, already, filed such a complaint, and it is listed for trial on July 9, 1996.

There is no proof of substantial inaccuracies in the Debtor's Schedules on this record. We note that, in their discharge/dischargeability complaint, the Movants invoke § 727(a)(4)(A), which bars the discharge of a debtor who knowingly and fraudulently makes a false oath or account in the Schedules. Therefore, this issue, if it has sub-stance, will come before the court in what we believe is a more appropriate posture. *But see In re Segal,* 195 B.R. 325 (Bankr.E.D.Pa. 1996) (plaintiff must prove that discrepancies in the Schedules or in testimony were accomplished fraudulently and were material to bar a discharge under § 727(a)(4)(A)).

In sum, assuming *arguendo* that we applied the multi-pronged test of the GFFR to the instant facts, we would nevertheless be compelled to deny the Motion.

#### d. *The Damage Done*

We nevertheless consider it appropriate to observe that pursuit of an elusive GFFR in this case represented a waste of the resources of the parties and this court. The issues which the Movants raise could be (and now are) more appropriately raised in a discharge/dischargeability complaint which, having a basis in the Bankruptcy Code, can be decided under established legal principles rather than pursuant to judge-made homilies.

We also point out that no debtor, including this Debtor, receives much of a windfall from a Chapter 7 case. All of the Debtor's non-exempt assets will be distributed to creditors. Since the Debtor has opted to claim his state-law exemptions, he cannot receive any benefit from the more liberal federal exemptions in the Code. Again, any improprieties on the part of the Debtor can be dealt with by the challenge to the Debtor's discharge and the dischargeability of the Landeses' debts, which we have already indicated that we will permit the Landeses and the Franconia Trustee to belatedly pursue. Since we have resolved the Extension Motions as part of the instant disposition, the hearing of May 14, 1996, can therefore be confined solely to the issue of the Objections.

### D. CONCLUSION

An order consistent with the results of the Opinion will be entered.

### ORDER

AND NOW, this 14th day of May, 1996, after a lengthy hearing of April 18, 1996, on the Joint Motion of Lola Landes and Gregory Landes ("the Landeses") and GEA Realty, Inc. (collectively, "the Movants"), to dismiss this case ("the Motion"), on which date we

also had before us the Objections of the Trustee of the Estate of *In re Franconia Propane Gas Co.*, Bankr. No. 94–10294 DAS ("the Franconia Trustee"), to the Debtor's exemptions ("the Objections") and Motions of the Franconia Trustee and the Landeses to extend the time for their filing complaints objecting to the Debtor's discharge or the dischargeability of their respective debts ("the Extension Motions"), it is hereby ORDERED AND DECREED as follows:

1. The Motion is DENIED on the express condition that the Extension Motions are GRANTED. Pursuant to the Extension Motions, the Landeses and the Franconia Trustee are granted extensions to file and serve complaints objecting to the discharge of the Debtor or the dischargeability of their specific debts on or before May 24, 1996.

2. The hearings on the Objections only remains scheduled on

TUESDAY, MAY 14, 1996, at 9:30 A.M. and shall be held in Bankruptcy Courtroom No. 4 (Room 3620), Third Floor, United States Court House, 601 Market Street, Philadelphia, PA 19106.