**In re SATZBERG.**

No. 20979.

District Court, E. D. Pennsylvania.

Dec. 9, 1941.

Thomas Z. Minehart, of Philadelphia, Pa., for bankrupt.

David F. Kaliner, of Philadelphia, Pa., for trustee.

BARD, District Judge.

This matter is before me on application to commit the bankrupt for contempt for failure to comply with orders of the referee to turn over to the trustee $12,200 worth of merchandise, or its proceeds, and the books of the bankrupt's business.

The certificate of the referee sets forth that a petition in involuntary bankruptcy was filed against the bankrupt on July 7, 1939; that the trustee in bankruptcy filed petitions to have the bankrupt turn over to him dry-goods and wearing apparel of the cost value of $12,200 allegedly concealed by the bankrupt from the trustee, or the proceeds thereof, and to turn over the books of the business; that after answers had been filed by the bankrupt denying possession of these assets or of the books of the business, hearings were held; that on February 6, 1941, the referee entered written opinions and orders granting the prayer of the trustee's petitions; that copies of these opinions and orders were served upon the bankrupt; that no certificates for review were taken therefrom; and that the bankrupt has not complied therewith.

An examination of the testimony taken before the referee fully supports his conclusions. Briefly summarized, the evidence with respect to the merchandise

allegedly concealed shows from the bankrupt's own statements and testimony an unexplained inventory shortage of $12,200 occurring during the seven months prior to the bankruptcy. With respect to the books of the business, the evidence of the bankrupt was that he always kept them at his store, but that he never saw them after a constable levied on his store and locked him out just prior to the bankruptcy petition against him. No books, however, were found on the premises by the constable or the trustee.

■ The findings of the referee are supported by the entire record. The testimony of the bankrupt was unconvincing in nature and failed to explain plausibly the inventory shortage. This, however, is not the controlling question where imprisonment for contempt of the referee's orders is sought. The decisions in this circuit point out that the question at this stage of the proceeding is whether the property which the bankrupt is found to have concealed or withheld is still in his possession and control and he is physically able to deliver it to the trustee. The law and practice is clearly set forth in the opinion of this court in Re Epstein, 206 F. 568, at page 569, in which Judge McPherson, after pointing out that the first stage of the proceedings is a final determination of concealment of assets by the bankrupt at the time of bankruptcy, stated: "Then comes the next question: Are they still there? Or what has become of them? This is evidently a distinct subject, which should not be confused with the other, but should be separately treated. It will need no attention, unless the bankrupt should fail to comply with the order to hand over; but failure to comply makes him presumptively liable to punishment for contempt. But only presumptively; he may have a complete answer to any attempt to punish, and in any event he cannot be punished until he has been heard. In such a hearing the inquiry is directed to the bankrupt's present ability to pay the money or deliver the goods, and unquestionably he makes a sufficient answer if he shows that he is physically unable to obey the order. If it be true that he does not now possess or control the assets, he may still be liable to the criminal law; but, except for willful disobedience of the court's command, he cannot be confined by civil process."

In affirming this decision the Circuit Court of Appeals for this circuit said (210 F. 236, at page 239): "This is the first stage of the proceeding. The second stage is to determine whether or not the property required is still in the possession or control of the bankrupt, and that he is physically able to deliver it to his trustee. The correct practice at this stage of the proceedings has been authoritatively stated by Judge Gray in American Trust Co. v. Wallis, [3 Cir.], 126 F. 464, 61 C.C.A. 342, in the following language: 'If the bankrupt denies that he has possession or control of the property, or, if a third person in possession thereof claims to hold it, not as the agent or representative of the bankrupt, but by title adverse to him, and there is no evidence to indisputably show that such denial or claim is false or fraudulent, and that the case is one of simple concealment or refusal on the part of the bankrupt, or the one in possession, to deliver up the property as ordered, it would be an unwarranted stretch of power on the part of the court to resort to a summary proceeding for contempt for the enforcement of its order. In the absence of fraud or concealment, the bankrupt court can only order the delivery of property to the trustee which the bankrupt is physically able to deliver up, having the same in his possession or control. If it shall appear that he is not physically able to deliver the property required by the order, then, confessedly, proceedings for contempt, by fine and imprisonment, would result in nothing, certainly not in a compliance with the order. The contempt in this case could only be purged by a reiteration of the physical impossibility to comply with the order whose disobedience is being thus punished. An order made under such circumstances would be as absurd as it is inconsistent with the principles of individual liberty.' "

■ In the case at bar there is little before me to establish the present ability of the bankrupt to comply with the orders of the referee. While the conduct of the bankrupt appears to have been thoroughly reprehensible and possibly criminal, I feel that summary imprisonment for contempt, rather than criminal prosecution, is too drastic in the absence of a clear showing that the bankrupt is physically able to deliver the assets in question. Moreover, the referee has properly refused to grant a discharge to the bankrupt and, therefore, his assets are still subject to the claims of his creditors.

The application is denied.