In re Melvin Lane POWERS, a/k/a, Mel Powers and Mel Powers, d/b/a Mel Powers Investment Builder, Debtor.

J.A. COMPTON, Trustee Of The Estate of Melvin Lane Powers, Plaintiff,

v.

Melvin Lane POWERS, Defendant.

Bankruptcy No. 83–05547–H3–7.
Adv. No. 87–0169–H3.

United States Bankruptcy Court, S.D. Texas, Houston Division.

June 30, 1989.

Rosemary E. Williams, Houston, Tex., for debtor/defendant.

Melvin Lane Powers, pro se.

Don Fogel, Morris & Campbell, Houston, Tex., for plaintiff.

## MEMORANDUM OPINION

LETITIA Z. CLARK, Bankruptcy Judge.

Came on for trial the complaint of the Trustee, Jeff Compton, for denial of the discharge of Mel Powers pursuant to 11 U.S.C. § 727. After consideration of the evidence and argument presented in this case, this court enters the following Findings of Fact and Conclusions of Law, and corresponding Judgment denying discharge. To the extent any findings of fact herein are construed to be conclusions of law, they are hereby adopted as such. To the extent any conclusions of law herein are construed to be findings of fact, they are hereby adopted as such.

### I. *Background Facts*

The Debtor, Mel Powers, is a Houston businessman who by the time of the filing of his Chapter 11 petition on December 29, 1983 had amassed a considerable amount of real property in the Houston area. This property consisted primarily of office buildings which Powers and his employees built, leased and managed. Powers was simultaneously involved in a number of other business endeavors. His other business interests were largely in real estate, although he had additional interests, such as the sale of aircraft fuel and services for private aircraft at Houston Hobby Airport.

In the years just prior to the filing of the Chapter 11 petition, Powers began having problems maintaining the heavy debt burden on his office buildings, all of which were subject to liens of various lenders. He testified that during 1983 real estate values dropped in Houston and Houston experienced a surplus in office space.

In late 1983 Powers filed his individual Chapter 11 petition, which included his d/b/a, Mel Powers Investment Builder. The Debtor subsequently filed a Chapter 11 plan and on May 3, 1985 the plan was confirmed. A year and one-half later, November 12, 1986 the Debtor's Chapter 11 case was converted to Chapter 7 pursuant to 11 U.S.C. § 1112, following a vigorously contested hearing. The Chapter 7 Trustee in the case, Jeff Compton, brings this objection to the discharge of the Debtor, Mel Powers, under 11 U.S.C. § 727, based upon seven separate counts of wrongdoing in connection with the bankruptcy case. The Objection of the Trustee was heard in a lengthy trial with numerous witnesses and voluminous documentary evidence. After careful consideration of the evidence presented, this court concludes that the relief of discharge under the Bankruptcy Code should be denied to the Debtor, Mel Powers, pursuant to 11 U.S.C. § 727.[1]

## II. *Discussion of Applicable Law Under 11 U.S.C. § 727*

11 U.S.C. § 727 is the heart of the fresh start provisions of the bankruptcy law. *Notes of the Committee on the Judiciary,* Senate Report No. 95–989, 95th Cong., 2d Sess. 98–99 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. The philosophy underlying 11 U.S.C. § 727 is that the bankruptcy discharge is not a matter of right to the debtor but rather a statutory privilege afforded the debtor who meets certain requirements of honesty and good faith in connection with his or her case. *U.S. v. Fraidin,* 63 F.Supp. 271 (D.Md. 1945).

The relevant provisions of 11 U.S.C. § 727 specify a denial of discharge to the debtor who has committed certain types of wrongdoing in connection with his bankruptcy case. If the debtor or an officer of the estate, with intent to hinder, delay or defraud his creditors, has transferred, removed, mutilated, or concealed, or permit-

ted any similar action by another with respect to property of the estate or property of the debtor within the one year prior to the filing of the petition, then the debtor is denied discharge. 11 U.S.C. § 727(a)(2).

The debtor is also denied discharge if he has concealed, destroyed, mutilated, falsified or failed to keep or preserve any books and records from which his financial condition might be ascertained, unless the act or failure to act was justified under all of the circumstances of the case. 11 U.S.C. § 727(a)(3).

Another ground which will support denial of discharge is commission of a bankruptcy crime, including making of a false oath or account and withholding books and records relating to the debtor's financial affairs from an officer of the estate entitled to possession of them. 11 U.S.C. § 727(a)(4).

Another ground which will support denial of discharge is the failure of the debtor to explain satisfactorily any loss of assets or deficiency of assets of the estate. 11 U.S.C. § 727(a)(5).

A discharge may be denied to a debtor who has refused to obey any lawful order of the court. 11 U.S.C. § 727(a)(6)(A).

■ In general, the provisions of 11 U.S.C. § 727 for denial of discharge are construed liberally in favor of the debtor. *In re Jones,* 490 F.2d 452 (5th Cir.1974).

■ The objecting party has the burden of proof as to sufficient facts which would defeat the debtor's entitlement to discharge. *Hardie v. Swafford Bros. Dry Goods Co.,* 165 F. 588 (5th Cir.1908). The debtor has the burden of proof as to his or her lack of intent to deceive. *In re Hemhill,* 1 B.C.D. 1181 (D.Ga.1975).

The court has a wide degree of discretion in the application of 11 U.S.C. § 727. *In re Martin,* 698 F.2d 883 (7th Cir.1983); *In re*

---

1. Each count of the complaint will be considered separately in this opinion. The court recognizes that a finding as to only *one* of the bases enumerated in 11 U.S.C. § 727 and set forth in the complaint by the Trustee will support a denial of discharge. However, in view of the immense amount of evidence presented in this case, and the possibility of appeal, the court believes that some discussion of the separate bases upon which the denial of discharge was urged by the Trustee is warranted.

*Lineberry,* 55 B.R. 510 (Bankr.W.D.Ky. 1985).

III. *11 U.S.C. § 727(a)(2)(A) and 11 U.S.C. § 727(a)(2)(B)*

The Trustee has urged that certain transfers by the Debtor in the year preceding bankruptcy and after the filing of the petition violate 11 U.S.C. § 727(a)(2)(A) and 11 U.S.C. § 727(a)(2)(B).

■ With respect to 11 U.S.C. § 727(a)(2)(A) and (B), there must be actual intent by the debtor to hinder, delay or defraud his or her creditors. *Rader v. Lichtenthal,* 306 F.2d 195 (2nd Cir.1962); *In re Baughman,* 58 B.R. 967 (Bankr.S.D. Tex.1986). Additionally, the court may infer from the testimony of the debtor his intent in making such transfers. *In re Gurney,* 71 F.2d 144 (2nd Cir.1934). Actual intent may be proven by circumstantial evidence. *Matter of Chastant,* 873 F.2d 89 (5th Cir.1989).

■ One of the transfers identified by the Trustee was the transfer evidenced by a deed (Trustee's EX 1) from Mel Powers to Jan Nelson, six months prior to the filing of the petition. Ms. Nelson was an employee of Debtor, and was identified by several witnesses as an extremely close friend of Debtor, as well. This deed conveyed a one-half interest in a condominium in California to Nelson. Powers did not produce any evidence at trial that this conveyance was for adequate consideration. Such a transfer of a valuable asset for inadequate consideration is *prima facie* grounds from which the court can infer that the transfer was intended to defraud. *In re Woods,* 71 F.2d 270 (2nd Cir.1934) *cert. denied,* 293 U.S. 601, 55 S.Ct. 117, 79 L.Ed. 693 (1934). Powers failed to meet his burden of proof in rebutting the presumption of fraudulent intent which arises when property is transferred gratuitously. *Matter of Chastant,* 873 F.2d 89 (5th Cir.1989). He was not credible in his testimony that he was not aware of existing or impending serious financial difficulties.

■ The Trustee also demonstrated that approximately five months before the filing of the petition the Debtor transferred via delivery of a warranty deed a unit in the Houstonian high rise apartment building to Cynthia Guthrie. (Trustee's EX 3.) Guthrie was identified by several witnesses as Powers' girlfriend. This deed was not recorded. However, recording is not a prerequisite to the existence of a transfer, where, as here, there is a written deed signed by the grantor and delivered to the transferee. *See, Thornton v. Rains,* 157 Tex. 65, 299 S.W.2d 287 (1957). Powers, at trial, did not produce any evidence that this transfer was made for consideration. The court concludes that the transfer was intended to defraud the creditors of the estate, consistent with 11 U.S.C. § 727(a)(2)(A). *See, Matter of Chastant,* 873 F.2d 89 (5th Cir.1989). He was not credible in his testimony that he was not aware at the time of the transfer of existing or impending financial difficulties.

The Trustee also demonstrated a transfer by the Debtor five months before he filed bankruptcy, to Jan Nelson of a percentage interest in a partnership, known as F–M–P Joint Venture 227. (Trustee's EX 4.) Debtor did not produce any evidence at trial that this transfer was for adequate consideration. He was not credible in his testimony that he was not aware of his existing or impending financial difficulties. The court concludes that this transfer was for inadequate, if any, consideration and was made with intent to defraud creditors.

In addition to the prepetition transfers described above, the following postpetition transfers were demonstrated by the Trustee at trial, and support the denial of discharge of the Debtor pursuant to 11 U.S.C. § 727(a)(2)(B):

1. Mel Powers gave to employees without consideration seventeen cars, which were listed in the schedules filed in the case, for no consideration. See Trustee's EX 5 and EX 6 (the Debtor's schedules) and Trustee's EX 52 (the summary of the schedules). Both the Trustee and Mel Powers testified to Mel Powers' giving away these cars. His testimony that this saved money for the estate was not credible.

2. On the date of confirmation, Mel Powers made two nonpayroll payments to his brother, Garrett Powers, one of $81,000.00 and one of $50,000.00. Ken Warren, Mel Powers' former accountant, testified that the $50,000.00 represented a loan to Garrett Powers. (Trustee's EX 35.) Powers was unable to show such payments were in the ordinary course of business of the operating Chapter 11 Debtor, or that there was consideration for these payments. There were no documents evidencing any such loan, and no credible evidence that the monies were ever repaid. These payments were not authorized by the court pursuant to 11 U.S.C. § 363 nor consented to by the creditors of the debtor.

3. Jeff Compton, the Chapter 7 Trustee, and Danni Brannon, a former employee of Powers', testified credibly that a significant quantity of construction material purchased by Mel Powers during the course of the Chapter 11 case disappeared from the actual inventory of the Debtor and was either physically transferred to another location or hidden by computer miscoding done by employees of Mel Powers with his knowledge and at his instruction. The "tracks" of this missing inventory were discovered by the Trustee upon investigation of the Debtor's accounting system. Mel Powers was unable to provide any credible explanation for such disappearances at trial. (Trustee's EXs 42 & 43.)

4. Mel Powers, at the time the case was converted to Chapter 7, instructed his construction manager, James Creech, to transfer furniture abandoned by former tenants (often in lieu of rent) in the Arena Towers to the Debtor's Riverwood property in Hemstead, and to a boat stall leased by the Debtor. Several former employees testified credibly that much of this furniture which had been abandoned by departing tenants was sold for cash. Powers testified that the furniture was not sold for cash and that the funds were deposited in the Debtor's operating account; however, he produced no documentary evidence in substantiation of this assertion. His testimony was not credible; the testimony of Mr. Creech was credible, and was corroborated by that of Rita Blevins.

5. The Debtor made a number of transfers of estate property after the conversion of his case to Chapter 7 to six entities in which he had no formal ownership interest but with which he was closely involved. (See, Trustee's Demonstrative EX 87 for a Summary of Entities.) The principals of most of these entities were close friends or long time business associates or employees of Mel Powers. (Southern Financial, Randy Black, pres.; Chemical Financial, W. Charles Davis, Pres.; Franklin Financial, D.D. Reynolds, Pres.; Lincoln Financial, Myriam Umbarger, Pres.; Brazos River Investment Group, Ezelle Kinney, Pres.) Mel Powers was instrumental in the formation of all of the entities. The documents creating or incorporating all of the entities were drafted by one attorney employed by Mel Powers in a variety of matters, Russell Mackert. Mackert was apparently paid in cash for his legal services. He was unable to produce documentation of payment.

For documentation of the transfers See Trustee's EXs 16, 23, & 78, for transfers to Chemical Financial; Trustee's EXs 14 & 100 for transfers to Franklin Financial; Trustee's EXs 21, 22, 25, 27 & 31 for transfers to Lincoln Financial; Trustee's EXs 15, 20, 72 & 73 for transfers to Brazos River Investment Group; Trustee's EXs 12 & 13 for transfers to Southern Financial. Powers was unable to demonstrate any consideration received by the estate for these transfers.

He advanced cash for the property acquired by Brazos River Investment Group. He signed a confidential letter of guarantee of payments of stock purchase agreement for the purchase of the corporate stock of Laurence Barbernell/Skytravel, Inc. (Trustee's EX 32.) He demonstrated no consideration to the estate for these transfers.

Money subsequently came to Powers personally from these entities. He testified that these monies were for services

he rendered as a consultant. In view of the transfer by Powers of estate assets without consideration, some of which have found their way back to him but not to the estate, the court does not find this credible.

■ The number of transfers both pre-petition and postpetition for little or no consideration, indicates a pattern of conduct by the Debtor from which intent to defraud may be inferred. *In re Reed,* 700 F.2d 986, 991 (5th Cir.1983). The court finds that Mel Powers effectuated all of the specified pre-petition and post-petition transfers knowingly and with intent to hinder, delay or defraud his creditors. The Trustee has met his burden of proof as to the occurrence of transfers and lack of consideration. Mel Powers has not met his required burden of proof by a sufficient showing that he did not have wrongful intent. On this basis the discharge of Mel Powers is denied pursuant to 11 U.S.C. § 727.

### IV. *11 U.S.C. § 727(a)(3) and 11 U.S.C. § 727(a)(4)(D)*

■ The Trustee argues as separate bases for denial of discharge 1) that Mel Powers concealed and falsified volumes of documents relating to the assets of the estate, as specified at 11 U.S.C. § 727(a)(3) and 2) that Mel Powers knowingly withheld documents relating to Debtor's property from the Trustee, as specified at 11 U.S.C. § 727(a)(4)(D). The Trustee produced ample evidence at trial.

Mel Powers denied in his deposition of April 14, 1988 (EX 94) that many documents were in existence or were in his possession yet, pursuant to a writ of sequestration, the Trustee was subsequently able to recover from Powers' possession many of the documents which were earlier identified and requested at the deposition. (Trustee's EXs 62, 64, 65, 66, 67 & 68.)

Powers testified at trial that he kept with him a briefcase of "legal documents" at all times. He admitted that he put such a briefcase full of documents out on the roof of his Hempstead house to avoid the United States Marshal's executing on the writ of sequestration.[2]

The Trustee was entitled to these records even without a writ of sequestration, pursuant to his duties identified at 11 U.S.C. § 704. The withholding or alteration of them is made a criminal offense at 18 U.S.C. § 152.

In addition, there was extensive credible testimony at trial as to falsification and alteration of many documents and computer entries at Mel Powers' direction. Danni Brannon, a Mel Powers former clerical employee, whose testimony the court found credible, testified to repeated incidents of miscoding of invoices such that they would not reflect personal expenditures of Mel Powers in the computerized accounting system, at the instruction of Mel Powers and Garrett Powers. This testimony was substantiated by the credible testimony of Rita Blevins, a former employee of Garrett Powers' company, Powers' Contractors, who worked in Mel Powers Investment Builders' office space, and of James Creech, a former employee of Mel Powers Investment Builders. In addition, Rita Blevins testified credibly to extensive creation of back-dated corporate document and alteration of corporate documents at the direction of Mel Powers. These were typed by Rita Blevins at the direction of Mel Powers. These documents related, inter alia, to ownership in the stock of Hempstead–Riverwood, Inc. and the real property it held. They include corporate minutes and resolutions, stock certificates, and an Earnest Money Contract. (Trustee's EXs 61A through 61Z, 61AA through 61–II, 60A–Y and 60CC, DD, and JJ.) Ms. Blevins testified to witnessing the forging of

---

**2.** Powers asserted that these documents were of a legal nature and not related to the bankruptcy. The court finds this assertion to be implausible under the circumstances of this case. Powers has been in bankruptcy since 1983. There has been no showing that he is married or has been married at any time during the pendency of this bankruptcy case. The Trustee has been seeking since 1987 denial of Powers' discharge and thus is seeking access to Powers' postconversion assets. Accordingly, Powers has essentially no business interests which are not of interest to the creditors in this bankruptcy case.

the signature of Shirley Sasson, on the document identified as Trustee's EX 61–0, "Minutes of the Annual Meeting of the Board of Directors of Hempstead–Riverwood, Inc." Ms. Sasson is identified in the document as a director also serving as Secretary. Her signature is spelled "Shirley Sassin."

Ms. Brannon also testified to occasions of alteration of documents for the purpose of misleading the Trustee and the lawyers involved in the case. This testimony was supported by that of Rita Blevins.

■ The court has wide discretion with respect to basing a denial of discharge on the failure of the Debtor to maintain proper books and records. *Texas National Bank v. Edson,* 100 F.2d 789 (5th Cir.1939). Intent of the Debtor to fail to cooperate with the required maintenance of documentation or to produce such records upon legal requests for such documents or records is not required. A finding of negligence will suffice. *Bartolotta v. Lutz,* 485 F.2d 227 (5th Cir.1973).

The Trustee met his burden of proof on this ground for denial of discharge under 11 U.S.C. § 727(a)(3). At the time the case was filed Powers showed on his schedules assets of over two hundred and fifty million dollars. The testimony of the Chapter 7 Trustee as to the poor and fragmentary state of the business records made available to the Trustee following conversion to Chapter 7 was credible. At a minimum, Powers as a manager of assets of this magnitude has been negligent in the extreme. In addition, the Trustee has met his burden of proof as to 11 U.S.C. § 727(a)(4)(D); the court finds that the Debtor knowingly withheld and concealed records from the Trustee. Each of these bases separately supports the denial of discharge to Mel Powers.

### V. *11 U.S.C. § 727(a)(4)(A)*

■ Mel Powers gave a false oath justifying denial of discharge in that he failed to list ownership of a significant asset on his schedules. He failed to list a thirty-six foot Sea Ray motor yacht purchased in November, 1979. (Trustee's EXs 69, 70 & 71.) Powers testified that he merely co-signed the note on the boat to permit Lambert, a Powers employee, to purchase the yacht. The documentary evidence fails to support this explanation as Powers was shown as a co-owner and not a guarantor on the 1979 security agreement (EX 69) and on 1985 recordation documents for filing with the United States Coast Guard (EX 70).

On this basis the court finds pursuant to 11 U.S.C. § 727(a)(4)(A) that discharge should be denied.

### VI. *11 U.S.C. § 727(a)(5)*

■ The Trustee asserts that Powers has repeatedly failed to explain the losses which the Trustee has discovered in the books of the Debtor. Especially troublesome is Powers' failure to explain satisfactorily the construction materials shown as missing. (Trustee's EX 56), discussed at Section III above. Powers also gave no convincing explanation for numerous payments to Garrett Powers and to the "related entities" for whom Powers served as a "consultant." (Trustee's EXs 96 & 100, and see discussion at Section III above).

There was also no satisfactory explanation for the absence of certain property shown on the Debtor's schedules at the beginning of the case, which the Trustee could not find after conversion, such as the cars given away to employees. (Trustee's EXs 5 & 6.) In addition, a comparison of page 84 of the schedules filed by the Debtor June 8, 1984 with the same page of the Debtor's amended schedules filed December 12, 1986 indicates five insurance policies with a combined cash surrender value of just under $90,000.00 which were not listed in the Debtor's amended schedules. This discrepancy was never satisfactorily explained by Powers. (See Trustee's EX 5 & 6.)

The evidence is sufficient to warrant this court's denial of discharge of Mel Powers pursuant to 11 U.S.C. § 727(a)(5). The court found not credible the Debtor's explanation that the losses were only attributable to mistake and inadvertance on his part while he was trying to hold the failing business together. The size and sophistica-

tion of Mel Powers' business operations and the size and nature of the unexplained losses, render such an explanation unsatisfactory.

### VII. *11 U.S.C. § 727(a)(6)(A)*

 The court also finds sufficient evidence to support the Trustee's assertion that Mel Powers should be denied discharge because of his repeated failure to obey lawful orders of the court.

The Trustee produced evidence of unauthorized payments of money, out of the ordinary course of business, to Garret Powers. (Trustee's EXs 100 & 101.) Ken Warren testified credibly that substantial amounts of money were paid out of the tax escrow account for the Arena buildings without court approval, on the instructions of Mel Powers. Such withdrawals and expenditures are outside the ordinary course of business and in violation of 11 U.S.C. § 363 as well as in violation of the Debtor's plan, confirmed by Order of the court, and in violation of agreed orders with Bank of America, and of subsequent orders enforcing those agreed orders. (See, Trustee's EXs 28, 48, 49, 82, 84).

Additionally, the noncompliance of this Debtor during the discovery process in bankruptcy adversary proceeding 87–0165 resulted in a contempt Order by District Judge Hittner, for Powers' failure to comply with court orders, as a result of which Powers was jailed for a period of time. (Trustee's EXs 84, 85 & 86.) The Trustee has met his burden of proof as to the denial of the discharge of Mel Powers pursuant to 11 U.S.C. § 727(a)(6)(A).

For the statutory purpose of the discharge in bankruptcy to be effected, the privilege of a discharge from all prepetition debts must be dependent upon honesty, fair presentation of the Debtor's financial affairs and good faith actions by the Debtor in compliance with the Code. Mel Powers has failed to show compliance with these prerequisites to discharge. The explanations and excuses given by Powers for the proven acts of bad faith and wrongdoing in connection with his bankruptcy case are not sufficient to support discharge in light of the extensive evidence of not only negligent disregard for the rights of his creditors and for his own duties to them and to the estate, but also a wilfull determination that either he or his friends and associates would retain a substantial portion of those assets, rather than see them go to creditors, in spite of the requirements of the Code and various orders of court. The Debtor's discharge is denied pursuant to 11 U.S.C. § 727. This decision is the subject of a separate Judgment based on the above findings of fact and conclusions of law.

It is so ORDERED.