In re Ferrel A. LANDES, Debtor,

Gregory K. LANDES, Lola Landes, Plaintiffs,

v.

Ferrel A. LANDES, Defendant.

Andrew N. SCHWARTZ, Trustee for Estate of Franconia Propane Gas Company, Plaintiff,

v.

Ferrel A. LANDES, Defendant.

Bankruptcy No. 95–19741DAS.
Adversary Nos. 96–0616DAS, 96–0779DAS.

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 17, 1996.

---

Natale F. Carabello, Jr., Philadelphia, PA, for Debtor.

Arthur P. Liebersohn, Trustee, Philadelphia, PA.

Andrew N. Schwartz, Philadelphia, PA (Trustee in In re Franconia Propane Gas Co., Bankr. No. 94–10294) ("the Franconia Case Trustee").

Louis Hockman, Snitow & Snitow, Philadelphia, PA, for Franconia Case Trustee.

Jonathan K. Hollin, King of Prussia, PA, for Plaintiffs in Adv. No. 96–0616.

Frederic J. Baker, Ass't. U.S. Trustee, Philadelphia, PA.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

The precursor to the instant decision was our Opinion reported as *In re Landes*, 195 B.R. 855 (*"Landes I"*). In *Landes I*, we denied the motion of LOLA LANDES ("the Wife") and GREGORY LANDES ("the Son," with the Wife, "the Plaintiffs"), the estranged wife and son, respectively, of FERREL A. LANDES ("the Debtor"), to dismiss the instant underlying Chapter 7 case ("the Instant Case") on the ground that it was a bad faith filing ("the Dismissal Motion"). Therein, we not only denied the dismissal motion, but we also rejected its underlying philosophy.[1] We pointed out that the ends sought by the Plaintiffs could be attained more appropriately in a challenge to the Debtor's discharge. *Id.* at 865.

Not surprisingly, the Plaintiffs, in addition to a half-hearted effort to have us reconsider *Landes I*, have instituted a proceeding ("the Plaintiffs' Proceeding") challenging the Debtor's discharge and the dischargeability of his indebtednesses to them. The Plaintiffs invoke 11 U.S.C. § 727(a)(7), asserting violations of 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4), (a)(5), and (a)(6) arising out of the course of the bankruptcy case, Bankr. No. 94–10294DAS, of the Debtor's former closely-held corporation, Franconia Propane Gas Co. ("Franconia;" that case is referenced as "the Franconia Case"), as well as violations of § 727(a)(4) in the Instant Case, and 11 U.S.C. §§ 523(a)(5), (a)(6), and (a)(15) as to dischargeability of their particular debts in the Instant Case. They are joined by ANDREW N. SCHWARTZ, ESQUIRE, Franconia's Chapter 7 Trustee ("the Trustee"), who filed his own proceeding ("the Trustee's Proceeding," with the Plaintiffs' Proceeding, "the Proceedings"), in challenging the Debtor's discharge under §§ 727(a)(7), (a)(2), (a)(3), (a)(4), (a)(5), and (a)(6).

We find that the Debtor's hostile, totally uncooperative, and contemptuous behavior in the course of the Franconia case extended into the period one year prior to the instant bankruptcy filing, requiring denial of the Debtor's discharge pursuant principally to 11 U.S.C. §§ 727(a)(7), (a)(6)(A), and secondarily 11 U.S.C. §§ 727(a)(7), (a)(2)(A) and (a)(3). In light of this disposition, we need not and therefore do not reach any of the Plaintiffs' alternative claims arising solely out of the Instant Case, the strongest of which appears to be a § 727(a)(4)(A) claim based on the Debtor's failure to disclose modest employment income and certain modest assets on his Schedules.

### B. FACTUAL AND PROCEDURAL HISTORY

The Plaintiffs' Proceeding was filed on May 9, 1996. The Trustee's Proceeding was filed on May 24, 1996. Both were timely filed pursuant to an extension, until May 24, 1996, allowed for such filings in the Order accompanying *Landes I*. 195 B.R. at 866. The Debtor had commenced the Instant Case, a voluntary individual Chapter 7 bankruptcy filing, on December 13, 1995.

As we noted in *Landes I, id.* at 857, the instant case was preceded by the Debtor's

---

1. In referencing what we termed the "frustrate bankruptcy purpose" and "multi-pronged" tests for determining whether a case had been filed in good faith, we said that

> [i]t is bad enough for a court to focus on one difficult and irrelevant inquiry, *i.e.*, a debtor's motivations for filing bankruptcy. It is far more wasteful, and thus poorly advised, to attempt to focus on a series of often difficult and irrelevant inquiries, with no guidelines regarding the weight of the different factors. Nor is it helpful, at least to the senses of this court, to introduce a "smell test," as the Movants suggest. Smell is an adaptive sense. What smells bad to one person might be perfume to another. Rather, it appears to us that a "*smell test*" is simply the ultimate surrender

to moralistic selectivism and an abdication of principled decision-making, *i.e.*, it smells bad, I don't like it, get it out of here, don't ask me for reasons. We suggest that decision-making must be more principled and orderly than that.

We stated our position rejecting these tests strongly, because we recognized that it could constitute our "last hurrah" in light of the pendency of a Chapter 13 case in which we had expressed similar "anti-good faith filing requirement" sentiments, *In re Lilley*, 181 B.R. 809 (Bankr.E.D.Pa.), *rev'd on other grounds*, 185 B.R. 489 (E.D.Pa.1995), *rev'd*, 91 F.3d 491 (3d Cir. 1996), before the Court of Appeals. In *Lilley, id.* at 496, the Court of Appeals adopted essentially a multi-pronged good faith test in Chapter 13 cases.

filing of the Franconia Case and a prior individual case, both under Chapter 11 of the Bankruptcy Code, on January 24, 1994. On September 24, 1994, we voluntarily dismissed the Debtor's first individual case. *See id.* at 857, 865. However, after an extensive hearing, we denied the Debtor's motion to voluntarily dismiss the Franconia Case. *See id.* at 857. In so doing, we refused to ignore the attempts of the Debtor and his son-in-law, Michael Davis, to transfer the assets of Franconia's business to a new corporation formed by them. *Id.* We were so unimpressed with the Debtor's credibility at that hearing that we directed a letter of October 3, 1994, to the United States Attorney, pursuant to 18 U.S.C. § 3057(a), suggesting consideration of criminal prosecution of the Debtor and Davis for knowingly and fraudulently taking property from Franconia's estate.

Although no criminal action was undertaken against the Debtor, the Trustee was obliged to file an adversary proceeding to attempt to wrest control of Franconia from the Debtor and Davis. On December 15, 1994, in exchange for the Trustee's withdrawing his claims for monetary damages from the Debtor for his past actions, the Debtor consented to the entry of a comprehensive Consent Judgment of that date against him. Specifically, pursuant to that Consent Judgment, the Debtor agreed to make all of Franconia's bulk propane gas storage tanks and other assets available to the Trustee, provide the Trustee with all information regarding Franconia's outstanding accounts receivable, and cooperate with the Trustee in accessing customer data from Franconia's computers in order that the Trustee could effectively market Franconia's business. The Debtor also expressly waived any right to object to the ultimate sale of Franconia's assets by the Trustee or to appeal from any order entered as the result of a motion requesting such a sale.

The Trustee testified at the trial of the Proceedings, consistent with his prior testimony, that the Debtor, despite agreeing to the terms of the Consent Decree, did not abide thereto in several respects. Firstly, the Debtor failed to provide a computer password to the Trustee which would have allowed the Trustee to access Franconia's computer records. In addition, he refused to allow the Trustee or Farm and Home Oil Co. ("F & H"), a former competitor of the Debtor hired by the Trustee to operate the Debtor, access to Franconia's bulk propane storage tanks.

On February 28, 1995, we conducted a hearing on the Trustee's motion to sell most of Franconia's assets to F & H. The only party appearing to oppose same was the Debtor, who produced a party who proceeded to attempt to outbid F & H for the assets. As a result of the court's expressed concern about the bid price, F & H increased its sale price offer from $510,000 to $550,000, and a sale on those terms was approved in an Order of March 3, 1995. The Debtor unsuccessfully sought a stay pending his ultimately unsuccessful appeal of this Order to the district court from that Order.

The Debtor meanwhile failed to comply with several other aspects of the Consent Decree, the most critical of which was the failure to provide the Trustee or F & H with access to the storage tanks. The Debtor attempted to justify his position by contending that the storage tanks were situated on property owned by him and the Wife by the entireties, which he claimed rendered this property outside of the scope of property of his estate. Therefore, he claimed that he could not, and he would not, allow the Trustee or F & H access thereto. The Trustee was therefore obliged to file, on March 10, 1995, a motion to hold the Debtor in contempt of this aspect of the Consent Decree. Therein, the Trustee indicated an intention to enlist the aid of federal marshals to enforce this aspect of the Decree, if necessary. Ultimately, the Debtor did not oppose the entry of an Order of March 21, 1995, pursuant to Federal Rule of Bankruptcy Procedure 9020, at a hearing of that date, in which the motion for contempt was granted. Also, he again agreed to turn over the storage tanks as of March 27, 1995. The contempt order further provided that federal marshals would be authorized to assist the Trustee and F & H in gaining access to the storage tanks, if necessary. In consideration for the Debtor's agreement to the entry of the contempt

order, the Trustee again withdrew his requests for monetary sanctions against the Debtor.

After these events, F & H successfully took possession of Franconia's assets, without apparent further interference from the Debtor or Davis. The Franconia Case is still being administered, although final audit papers are now due to be filed in it by the Trustee by December 2, 1996.

The only events of substance in the course of the Instant Case have been the litigation of the Dismissal Motion and of the instant Proceedings. The joint trial of the Proceedings commenced, after several continuances, on September 5, 1996. Due to the inability of the Trustee to attend on that day, his testimony was adduced on September 17, 1996. Thereafter, the Plaintiffs and the Trustee timely filed their respective post-trial briefs on October 1, 1996, and the Debtor timely filed his brief on October 11, 1996.

While the presentation of oral testimony and documentary evidence relating to the foregoing events of the Franconia Case were the centerpiece of the trial, there was also considerable testimony and evidence relating to the history of state court litigation between the Plaintiffs and the Debtor, and of alleged inaccuracies in, and omissions from, the Debtor's Schedules filed in the Instant Case.

The state court proceedings featured a divorce action brought by the Wife against the Debtor in 1987, and a stockholder derivative suit on behalf of Franconia instituted by the Son against the Debtor in 1988. In 1991, a settlement agreement of apparently most of the foregoing litigation was executed and approved by the state court, pursuant to which the Debtor was to buy out the Plaintiffs' interests in Franconia. However, the terms of this agreement were not performed by the Debtor. The position taken by the Debtor, similar to that which he took regarding the Consent Decree, was that he didn't agree to the terms of settlement of the state court litigation willingly, that he was therefore not bound thereby. We note that his counsel in the state court matters was a respected former state court judge called as a witness in the trial of the Proceeding, an individual unlikely to represent agreement of his client to terms to which he did not in fact agree.

There were three general categories of alleged discrepancies in the Debtor's Schedules filed in the Instant Case. Firstly, the only income reported by the Debtor was receipt of Social Security benefits of about $1,000 monthly, when in fact he also received about $7,000 income throughout the year as a salesman for two auto sales companies, reportedly received $15,000 in benefits from an insurance company, and leased certain of his property to a woman friend. The Debtor admitted the sales income and receipt of about $4,000 from the insurance company, claiming that he had forgotten about this income. He denied any income from the woman friend despite admitting the existence of the lease.

Secondly, the values of real properties disclosed at about $1.3 million in his prior Schedules were reduced to $865,000 in the Instant Case Schedules. In response, the Debtor argued that the property's value had probably depreciated, and he emphasized that all of the foregoing property was listed as exempt, in any event, due to its ownership with the Wife by the entireties. The Trustee withdrew the only objection to the exemptions claimed by the Debtor in the Instant Case, although the Trustee has persisted in pursuing the Proceeding because he believed that the real property would someday be divided with the Wife, and that Franconia's estate could then make a claim against these assets. However, we note that the Trustee in the Instant Case, Arthur P. Liebersohn, Esquire ("the Case Trustee"), has indicated no interest in administering any estate assets despite our directing him to appear at the trial of the Dismissal Motion in order that we could bring all of the issues raised therein to his attention firsthand.

Thirdly, the Schedules overstated the debts owed to the mortgagee of the real property, in light of the satisfaction of the mortgagee's claims in the course of administration of the Franconia Case, and failed to list a 1967 Ford Mustang automobile valued at $1,800, a large riding mower purchased in

1989 for about $5,000, and two Amish buggies. The Debtor testified that the automobile had been inoperable for several years, the buggies were returned to the seller when he was unable to pay the entire purchase price, and that the mower, while still in use, was not reliable. Therefore, he did not consider these items to be assets valuable enough to list. The Case Trustee, as noted, has indicated no interest in administering these or any other of the Debtor's assets.

## C. DISCUSSION

We observe at the outset the destructive course that the struggles between the Debtor on one hand and the Plaintiffs on the other have caused to all of these parties. The parties' dispute apparently began over the control of Franconia. The Debtor was financially successful in his operation of Franconia, but apparently was dictatorial in such as well. The state court proceedings depict considerable legal activity and substantial cost of counsel, but little progress towards any lasting resolution in the distribution of Franconia's assets or the distribution of property owned by the Debtor and the Wife by the entireties since litigation between them began in state court in 1987.

The 1994 ventures into bankruptcy proved to be destructive to the interests of all of the parties. The Debtor's stubborn attempt to ward off the Plaintiffs' state court actions apparently caused the bankruptcies to be filed in the first place. The Plaintiffs, on their part, were the primary objectors to the dismissal of the Franconia Case, which ultimately led to the complete loss of this crown jewel of all of these parties in the Chapter 7 liquidation of Franconia's assets.

It is difficult to understand why the Debtor filed the Instant Case, especially when he did, given that the one-year limitation in 11 U.S.C. § 727(a)(7) had not yet run as to all of his relevant actions. A Chapter 7 case could not have provided him with anything except discharge of a few debts and a brief period of respite in litigation of the matrimonial dispute with the Wife, assuming that those proceedings motivated this filing.

However, it is equally difficult to understand the Plaintiffs' persistence in pressing the Dismissal Motion, especially when this court indicated, upon first perusing it, that we were disinclined to grant it. The Proceedings challenging the Debtor's discharge make more legal sense, as will be established by the instant result. However, as it is difficult to understand what significant benefits the Debtor would have gained from a bankruptcy discharge, it is equally difficult to understand why the Plaintiffs and the Trustee are battling so hard to preclude the Debtor's discharge. It does not appear likely that the outcome will cause the Case Trustee to decide to administer the Instant Case as an asset case, although we will schedule a status hearing in light of this decision to ascertain his final wishes.

The only motivations underlying the filing of the Case, the Dismissal Motion, and the Proceedings appear to be, at bottom, a misplaced sense of wishing to attain "victory" over long-time opponents. The parties should more carefully assess the stakes before they continue to traverse, with great wasted energy, down this path. Although they have already lost their crown jewel, they stand to lose more. Legal actions are expensive weapons, although certain lawyers will keep firing ballistics until the funds for further ammunition are exhausted.

Although we perceive the course of the Instant Case and of the Proceedings as possibly destructive to all of the participants, we recognize that it is not our function to dwell on such an analysis. Our adversarial system presumes, rightly or wrongly, that parties and their advocate-lawyers are better able to assess what is in their own best interests than courts. Thus, it is our function to determine whether the Debtor should be granted a discharge under the applicable law, and leave the parties to deal with its consequences.

In this endeavor, we find it necessary to concentrate on 11 U.S.C. §§ 727(a)(7), (a)(2), (a)(3), (a)(4)(A), and (a)(6)(A). These Code sections read as follows:

§ 727. **Discharge**

(a) The court shall grant the debtor a discharge, unless—

.    .    .    .    .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

    (A) property of the debtor, within one year before the date of the filing of the petition; or

    (B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

    (A) made a false oath or account;

.    .    .    .    .

(6) the debtor has refused, in the case—

    (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;

.    .    .    .    .

(7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider;

. . .

As noted, it is apparent to us that the strongest claims of the Plaintiffs and the Trustee are that, within one year prior to December 13, 1995, the Debtor violated certain aspects of the Consent Decree entered on December 15, 1994, in the Franconia Case, thus precluding his discharge under 11 U.S.C. §§ 727(a)(7), (a)(6)(A). At the close of the trial we clearly articulated this assessment to the parties. The easiest means of measuring the validity of these claims is to assess the Debtor's arguments in opposition thereto, in light of authorities cited by the Plaintiffs and the Trustee and uncovered by this court. These arguments are as follows:

1. Exceptions to discharge are narrowly construed in favor of needy debtors. Having lost his life-long business, the Debtor is particularly needy. On this issue, the Debtor cites to *In re Chryst,* 177 B.R. 486, 493 (Bankr.E.D.Pa.1994) (SIGMUND, J.).

2. The Debtor was deprived of access to Franconia since the Trustee's appointment in August 1994, and therefore he was no longer an insider within one year from December 13, 1995. Thus, the claims under § 727(a)(7) are time-barred.

3. There is no evidence that the Debtor had the ability to provide the Trustee access to his records, computerized or otherwise.

4. The Debtor's refusal to allow the Trustee access to the bulk propane storage tanks was excusable, because such actions were taken on advice of counsel that the bulk plant was not property of the Debtor's estate, citing *In re Topper,* 229 F.2d 691, 693 (3d Cir.1956) ("advise of counsel may be an excuse for an inaccurate or false oath").

5. The Debtor did cooperate with the Trustee after the entry of the contempt order of March 21, 1995.

6. The Debtor's objection to the sale and appeal from the order allowing the sale to take place, though admittedly in violation of the Consent Decree, were not "willful" because they were intended to, and did, increase the proceeds realized in F & H's purchase of Franconia's assets.

■  We agree with the Debtor that exceptions to discharge are liberally construed in favor of debtors in light of the underlying purpose of the Code of allowing debtors to obtain a "fresh start." However, *Chryst,* which involved a challenge to the dischargeability of particular debts rather than a challenge to the debtor's general discharge, *see* 177 B.R. at 490, 492–96, is for that reason not a particularly apt authority for this principle. We would rather reference *Rosen v. Bezner,* 996 F.2d 1527, 1531 (3d Cir.1993); and *In re*

*Blanchard,* 1996 WL 546319, at *11 (Bankr. E.D.Pa. Sept. 23, 1996), for this principle.

■ In addition, we would submit two caveats. Firstly, it is unclear to us how · a discharge in the Instant Case would have been of great benefit to the Debtor in making a "fresh start." Secondly, irrespective of the benefits to a debtor, a discharge must be denied if any grounds under any section of 11 U.S.C. § 727(a) are proven by a preponderance of the evidence. *See, e.g., Grogan v. Garner,* 498 U.S. 279, 282–89, 111 S.Ct. 654, 656–61, 112 L.Ed.2d 755 (1991); and *Blanchard, supra,* at *4, and cases cited therein.

■ Regarding the Debtor's second argument, it is true that, in theory, the Debtor should have been deprived of access to Franconia's assets upon the Trustee's· appointment in August 1994. However, it is apparent to us that the Debtor, in concert with Davis, was attempting to continue to access and take possession of the assets and records of Franconia after the Trustee's appointment, for the benefit of himself and Davis. As the court points out in *In re Krehl,* 86 F.3d 737, 742–43 (7th Cir.1996), the Debtor's nominal resignation as president of Franconia was irrelevant. The substance of a valid §§ 727(a)(7), (a)(2)(B) claim is proven if it is established that an individual debtor in a position of authority attempted to exercise dominion over a corporate debtor's assets after conversion of the corporate case to Chapter 7. *See id.* at 742–44; *In re Powell,* 88 B.R. 114, 116–18 (Bankr.W.D.Tex.1988); and *In re Kessler,* 51 B.R. 895, 897–99 (Bankr.D.Kan.1985).

■ The preponderance of the evidence supports the conclusion that the Debtor did in fact transfer, remove, and conceal property of Franconia after the filing of the Franconia Case. However, it does appear that most, if not all, of this activity occurred before the entry of the Consent Decree, which was entered just about a year prior to the instant bankruptcy filings. These claims therefore appear to be outside of the one-year scope of § 727(a)(7).

■ However, with respect to a potential claim under §§ 727(a)(7), (a)(3), the credible testimony of the Trustee convinces us that the Debtor never supplied the computer password and therefore consistently deprived the Trustee of helpful information, even after the entry of the Consent Decree. Therefore, a rather strong claim is made out that the Debtor concealed and failed to preserve recorded information regarding Franconia's financial condition within the applicable one-year period, much in the manner of the *Krehl* debtor. *See* 86 F.3d at 744.

■ More clear, however, is the fact that the Debtor did not allow the Trustee or his agent and assignee, F & H, access to the propane storage tanks. Gaining possession of the storage tanks was important to the maintenance of Franconia's business and required the Trustee to file the contempt motion. It was only after the entry of the contempt order, placing the enforcement authority of the federal marshals behind the Trustee, that the Debtor capitulated. The Debtor's refusal to abide by this very critical aspect of the Consent Decree constituted a clearly-documented refusal on his part to obey a lawful and most significant order of this court within the applicable one-year period.

Numerous authorities have held that debtors must be denied a discharge under § 727(a)(6)(A) if they act in violation of, or in contempt of, court orders. *See In re Jones,* 966 F.2d 169, 172–74 (5th Cir.1992) (summary judgment denying a discharge on the ground that the debtor violated a court order is affirmed); *Kershaw v. Behm,* 81 B.R. 897, 902 (M.D.Tenn.1988); *In re Satzberg,* 42 F.Supp. 282, 283 (E.D.Pa.1941); *In re Davenport,* 147 B.R. 172, 181 (Bankr.E.D.Mo. 1992); *In re Dreyer,* 127 B.R. 587, 598–99 (Bankr.N.D.Tex.1991); *In re Powers,* 112 B.R. 184, 191 (Bankr.S.D.Tex.1989); and *In re Richardson,* 85 B.R. 1008, 1021 (Bankr. W.D.Mo.1988) ("the sanction [of denial of a discharge] should be applied for each and every proven violation [of bankruptcy court orders]."). *But see In re Warshofsky,* 1988 WL 121145, at *1, *3 (Bankr.E.D.Pa. Nov. 7, 1988) (discharge not denied to a debtor who provided a somewhat unclear accounting in response to a court order where same was found to represent his best efforts).

Our foregoing discussion addresses and disposes of the Debtor's third and fifth arguments. We do not credit the Debtor's contentions that he lacked the ability to comply with that aspect of the Consent Decree requiring him to provide the Trustee with access to Franconia's records. At other times the Debtor has proudly asserted that he *was* Franconia. It is highly doubtful that he would have allowed any aspect of that business to remain out of his control or direct supervision. We therefore find that he could have provided the computer password and information about Franconia's accounts, which would have been of great value to the Trustee and F & H, if he had any inclination to do so.

The fact that the Debtor complied with the contempt order after its entry on March 21, 1995, is to his credit, and there is no evidence that this assertion is not true. However, his failure to comply with all terms of the Consent Decree constituted actions within one year of the instant filing which are actionable under § 727(a)(6)(A). The Debtor chose to file the Instant Case in December 1995, instead of waiting to file until after March 21, 1996, when his subsequent compliance with the contempt order would have become significant.

■ The Debtor's attempted fourth argument, that he acted innocently on advice of counsel in refusing to turn over the propane storage tanks, rings hollow. We cannot bring ourselves to believe that the Debtor's counsel advised him that he could ignore a prominent and unambiguous provision of the Consent Decree on the basis of a strained legal argument. We believe that a much more likely scenario is that the Debtor presented his counsel with his refusal to abide by the Consent Decree, much like his after-the-fact justifications for not complying with state court-approved stipulations, and implored counsel to derive a creative justification for his actions.

The circumstances here are quite unlike those in *Topper*, where the debtor relied on seemingly logical advice of counsel that he need not list creditors whom he intended to pay on his Schedules. The debtor's actions there were deemed "understandable," and,

being irrelevant to the administration of the case, were found to have clearly not have been driven by an intent to defraud anyone. 229 F.2d at 693, 692.

The instant circumstances are more akin to those at issue in *In re Weber*, 99 B.R. 1001, 1015–19 (Bankr.D.Utah 1989), where the court refused to excuse an individual debtor's failure to properly restrict his corporate debtor's use of cash collateral on the grounds of ignorance of wrongdoing and bad advice of counsel, in denying the individual debtor a discharge under 11 U.S.C. §§ 727(a)(7), (a)(2). The *Weber* court, *id.* at 1019, ultimately explained its decision as follows:

> It is essential to the integrity of the chapter 11 process that a debtor in possession understand and abide by the fiduciary duty it owes to the creditors of its estate. The responsibilities imposed by the Bankruptcy Code cannot be ignored. Claimed ignorance of the law or lack of familiarity with legal concepts are insufficient excuses when a debtor in possession's breach of the statute injures a creditor. If the court fails to enforce the Code to protect creditors' rights in these circumstances creditors will cease dealing with debtors in possession, adversely impacting the entire rehabilitation process....

It is clear that the instant Debtor, in refusing to promptly allow the Trustee and F & H to take possession of the propane storage tanks, as he had expressly agreed to do in the Consent Decree, engaged in conduct which compromised the integrity of the process of administration of the Franconia Case and caused what should have been an unnecessary expenditure of estate assets. It is not readily "understandable" to us how the Debtor concluded that he could ignore the terms of the Consent Decree. It is moreover, unjust for him to do so when he had received consideration for this promise in the form of the Trustee's withdrawing his demands for damages against the Debtor. The Debtor's actions were thus highly relevant to the administration of the Franconia Case.

■ It is not necessary for us to make a finding of fraud in order for us to conclude that the Debtor's actions of refusing to allow the Trustee and F & H to take possession of the storage tanks violated §§ 727(a)(7), (a)(6)(A), since these Code sections have no scienter requirements, unlike § 727(a)(2), which was in issue in *Weber, supra,* 99 B.R. at 1015, 1017, 1019; and the violation of the Bankruptcy Act at issue in *Topper, supra,* 229 F.2d at 692–93. *Cf. Blanchard, supra,* at *11; *In re Cook,* 146 B.R. 934, 935–36 (Bankr.E.D.Pa.1992); and *In re Trinsey,* 114 B.R. 86, 90–92 (Bankr.E.D.Pa.1990) (§§ 727(a)(2) and (a)(4) claims are particularly difficult to prove because these Code sections contain a requirement that the debtor have a "culpable mens rea," which other sections of § 727(a) do not).

■ Moreover, assuming *arguendo* that a finding of fraud on the part of the Debtor were necessary to sustain a § 727(a)(6)(A) claim, we would have sufficient grounds to make a finding of the Debtor's "culpable mens rea" on this record. The Debtor acted in knowing violation of the clear terms of the Consent Decree. We cannot and will not countenance the excuse for such actions that the Debtor and/or his counsel devised a theory, after the entry of the Consent Decree, which would have justified the Debtor's refusal to make the storage tanks available to the Trustee. The Consent Decree acknowledged that the storage tanks were property of Franconia's estate, and hence subject to the control of the Trustee and his assignee, F & H. Unless and until that order was revised, the Debtor was obliged to adhere to it. The Debtor's failure to do so was a knowing and intentional, and, we might add, blatant, violation of § 727(a)(6)(A).

■ In response to the Debtor's sixth argument, we note that the Debtor similarly violated the express terms of the Consent Decree by opposing the Trustee's motion to sell the Debtor's assets to F & H and then appealing from the order granting that motion. Since the Trustee's motion to sell Franconia's assets was filed on February 7, 1995, and heard on February 28, 1995, and the appeal from the Order, docketed on March 3, 1995, was taken on March 10, 1995,

and pursued through the dismissal of the appeal by the district court on August 24, 1995, these actions in the Franconia Case were definitely taken within the year prior to the filing of the Instant Case. The actions of the Debtor in opposition to the motion to sell Franconia's assets also included his motion to stay the order approving the sale, which this court denied on March 21, 1995.

The Debtor's response, as referenced in his sixth argument, appears to be that this violation of the Consent Decree was justified because his opposition to the motion resulted in F & H's increasing its purchase price from $510,000 to $550,000 in the course of the hearing on the motion to sell. The Debtor observes that, under the terms of the Consent Decree, he would have been barred from opposing the motion even if the Trustee had offered Franconia's assets to F & H for as little as $100.00.

This argument proves too much. It appears to suggest that the covenants of the Consent Decree in which the Debtor waived his right to oppose the sale or appeal from an order approving the sale were inherently unenforceable and meaningless. A party subject to a consensual court order cannot simply avoid the complete effect of same by such an argument.

. Furthermore, this argument overlooks the oversight roles of Franconia's creditors, the Trustee, the United States Trustee, and the court in the sale process. It is true that, due principally to the testimony of a prospective buyer, whom the Debtor could have produced without filing an objection to the sale, the court indicated its dissatisfaction with the price offered by F & H, causing F & H to increase its purchase price from $510,000 to $550,000. However, this course of events, in our view, merely proves the efficacy of the court's role as an independent overseer of the sale process.

The purpose of the Consent Decree waiver provision was obviously to prevent the Debtor from attempting to sabotage the sale process and thus to require the Trustee to extend estate resources defending against efforts by the Debtor, who, not being a creditor, was not directly economically affected

by the sale process in the course of administration of Franconia's estate. The Debtor's actions, particularly those after the sale, were ultimately found to lack merit, but did require the estate to incur additional counsel fees in defending against them. Ultimately, the district court, in dismissing the appeal, stated as follows:

> Landes first violated the consent judgment by filing this objection to the Trustee's motion to sell and assign the assets of the Estate. The bankruptcy court enforced the consent judgment against Landes and determined that the agreement is valid and unambiguous. He has again violated the consent judgment by filing the instant appeal. Accordingly, appellees' motion to dismiss Landes' appeal must be granted.[3]

*In re Franconia Propane Gas Co.*, 1995 WL 508119, at *4 (E.D.Pa. August 24, 1995).

The Debtor's opposition to the sale motion and unsuccessful appeal from the order granting the motion were hence held by the district court to be violative of the Consent Decree. It could be argued that, in light of this passage, collateral estoppel precluded the Debtor from opposing the denial of his discharge on the basis of these actions under §§ 727(a)(7), (a)(6)(A). *See Grogan, supra,* 498 U.S. at 284 n. 11, 111 S.Ct. at 658 n. 11.

However, giving the Debtor the benefit of the doubt on this point, apart from the district court order, we independently find clear grounds to deny the Debtor's discharge on the basis of §§ 727(a)(7), (a)(6)(A). Especially when considered in light of the fact that the Debtor was adjudicated to have acted in contempt of the Consent Decree by failing to allow the Trustee and F & H access to Franconia's storage tanks, the cumulative effect, together with the Debtor's independent violations of the waiver of his opposition to the disposition of Franconia's assets, reflect gross violations of §§ 727(a)(7), (a)(6)(A) by the Debtor. His discharge must therefore be denied on these grounds, no matter how narrowly we construe these Code provisions.

Since a denial of the Debtor's discharge on one ground is dispositive of his right to a general discharge and the dischargeability of all of his debts, we need proceed no further in analysis of the alternative claims of the Plaintiffs and the Trustee. We therefore need not rely on §§ 727(a)(7), (a)(2)(B), nor on §§ 727(a)(7), (a)(3) as grounds for denial of the Debtor's discharge, although particularly the §§ 727(a)(7), (a)(3) grounds appear to have merit. *See* page 407 *supra.*

We finally turn briefly to the claims not based upon the Franconia Case and § 727(a)(7), but rather on the Debtor's activities in the Instant Case only. We note that the Debtor was very careless in completing his bankruptcy Schedules. His failure to disclose his income of over $11,000 from occasional employment and insurance benefits was quite significant. *Compare In re Freedman,* 1994 WL 455030, at *4–*6 (Bankr. E.D.Pa. Aug. 19, 1994), *aff'd,* 1995 WL 118217 (E.D.Pa. March 9, 1995) (gross misstatement of annual income, combined with failure to disclose assets, deemed sufficient to deny the debtor's discharge, since it tended to obfuscate the debtor's candidacy for 11 U.S.C. § 707(b) dismissal). Although the instant Debtor attributed these omissions and inaccuracies to his counsel, his overall lack of credibility rendered these claims and his right to a discharge on this ground doubtful. *Cf. In re Mistry,* 77 B.R. 507, 512–13 (Bankr. E.D.Pa.1987), *aff'd,* C.A. No. 87–6466 (E.D.Pa. Feb. 9, 1988); and *In re Somerville,* 73 B.R. 826, 833, 837–38 (Bankr.E.D.Pa.1987) (a debtor's lack of credibility in recitations to this court is often the touchstone of a discharge/dischargeability proceeding).

On the other hand, none of the inaccuracies in the Schedules appear to have been very material. *See In re Segal,* 195 B.R. 325, 333–34 (Bankr.E.D.Pa.1996) (debtor's intentionally inaccurate statements about his role in a prior business did not justify denial of his discharge because these actions had no effect on administration of his case). The Case Trustee, although we will require

---

**3.** Because the court finds that Landes violated the consent judgment and will grant appellees' motion to dismiss Landes' appeal, the court need not consider the appellees' second argument that the appeal should be dismissed as moot.

him to reappear at a status hearing to provide us with a final assessment in light of this decision, appeared totally disinclined to administer any of the alleged assets of the Debtor, irrespective of his enlightenment regarding the Debtor's potential assets. *Compare Blanchard, supra,* at *24, *25, *26 (inaccuracies regarding items which are exempt and not likely to be administered by the trustee are not material). It is rather clear that the Debtor's modest income, even if accurately disclosed, would not have mustered a § 707(b) motion. *See also In re Ziegler,* 156 B.R. 151, 155–56 (Bankr.W.D.Pa. 1993) (failure to disclose ownership of a motor vehicle, bank account, and interest in a valuable annuity contract held insufficient to merit denial of a debtor's discharge). Again, claims under § 727(a)(4)(A), which requires a showing of a culpable mens rea, are much more difficult to sustain than claims based upon § 727(a)(6)(A), which merely requires a showing of disobedience to the terms of a lawful court order, irrespective of the Debtor's mindset in so doing.

## D. CONCLUSION

We will therefore enter judgment in favor of the Plaintiffs and the Trustee in the Proceedings, denying the Debtor a discharge, noting that same is on the basis of 11 U.S.C. §§ 727(a)(7), (a)(6)(A). In light of this result, no purpose would appear to be served by making any definite conclusions regarding other grounds referenced in the Proceedings, nor in granting the Plaintiffs' motion for reconsideration of our Order accompanying *Landes I.* That motion will accordingly also be denied.

### ORDER

AND NOW, this 17th day of October, 1996, after a consolidated trial of September 5 and September 17, 1996, of the two above-captioned adversary proceedings ("the Proceedings") and of the Motion of Lola and Gregory Landes and GEA Realty, Inc. to reconsider our Order of May 14, 1996 ("the Motion"), it is hereby ORDERED as follows:

1. Judgment is entered in favor of the Plaintiffs in both Proceedings, GREGORY K. LANDES, LOLA LANDES; and ANDREW N. SCHWARTZ, Trustee for Estate of Franconia Propane Gas Company, respectively, and against the Defendant–Debtor, FERREL A. LANDES ("the Debtor").

2. The discharge of the Debtor is DENIED.

3. In light of this disposition, the Motion is also DENIED.

4. Also in light of this disposition, a status hearing in this case, at which it will be determined whether it can be closed upon our review of the counsel fees charged to the Debtor, to be attended by the case Trustee, Arthur P. Liebersohn, Esquire, is scheduled on

THURSDAY, NOVEMBER 7, 1996, at 9:30 A.M. and shall be held in Bankruptcy Courtroom No. 4 (Room 3620), Third Floor, United States Court House, 601 Market Street, Philadelphia, PA 19106.

5. The Debtor's counsel is directed to file, serve, and notice his application for any compensation received or promised to be paid in excess of $500, in accordance with Local Bankruptcy Rule 2002.2, on or before November 5, 1996. A copy of any such application filed shall also be served upon this court in chambers.